## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

_____

DANIELLE MARIE GEGAS,

     Plaintiff,

v.

ST. MATTHEW'S UNIVERSITY
SCHOOL OF MEDICINE,

     Defendant.

_____

Civil Action No: 6:22-cv-2299-PGB-EJK

## DEFENDANT ST. MATTHEW'S UNIVERSITY
## SCHOOL OF MEDICINE'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant St. Matthew's University School of Medicine ("SMU") moves to dismiss plaintiff Danielle Gegas's Complaint in its entirety for failure to state a claim.

### Introduction

Gegas is a medical student at SMU.  In order to graduate and participate in the National Resident Matching Program (the "Match"), Gegas must take and pass the United States Medical Licensing Examination ("USMLE") Step 2 CK examination.  "CK" is shorthand for clinical knowledge.  Students cannot sit for the exam until SMU determines in its discretion that they are ready to do so.

In connection with that determination, students take a pre-test examination, the Comprehensive Clinical Science Examination ("CCSE").

Gegas alleges that SMU arbitrarily revised its CCSE testing requirement to establish a more onerous passing score than was the case when she enrolled. Gegas further alleges that when she finally achieved the new score, after many attempts, SMU still determined that she had not demonstrated her readiness to take the USMLE Step 2 CK examination, and that these actions by SMU have delayed her graduation.  The complaint purports to assert claims against SMU for breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); fraudulent, deceptive, and unfair trade practices (Count III); fraud (Counts IV); declaratory judgment (Count V); and injunctive relief (Count VI).

Gegas's complaint fails to state a claim because, under well-settled Florida law,[1] SMU has the inherent right to establish, modify, and administer its graduation and other academic requirements; SMU's Clinical Medicine Handbook – the purported basis for Gegas's contract claims – expressly provided that students would need to demonstrate their readiness to sit for USMLE exams, which SMU would determine in its discretion; Gegas's claim that SMU acted in an arbitrary or capricious manner lacks any supporting factual

---

[1]  Gegas alleges that Florida law applies, Compl. ¶ 113, which SMU does not contest for purposes of this Motion.

allegations; and Gegas fails to identify any fraud, misrepresentation, or unfair and deceptive act by SMU.

## Factual Background

SMU is located on Grand Cayman Island in the Caribbean.  Compl. ¶ 3. Students of foreign medicals schools who seek to practice medicine in the United States must be certified by the Educational Commission for Foreign Medical Graduates ("ECFMG") and must take and pass the United States Medical Licensing Examination ("USMLE").  Compl. ¶¶ 33-35.  There are three stages to the USMLE.  Compl. ¶ 36.  The examination at issue in this case is the Step 2 CK exam, which is designed to assess whether the candidate can apply medical knowledge of clinical science to provide patient care under supervision.  *See*  https://www.usmle.org/prepare-your-exam/step-2-ck-materials/step-2-ck-content-outline-specifications.

Step 2 CK scores also are a critical component in medical student applications for the Match.  Compl. ¶ 95.  The Match is the system used to place medical students into residency training programs in teaching hospitals in the United States.  Compl. ¶ 51.  The Match is conducted annually and Students must receive ECFMG certification by February of their Match year. *Id*.

Gegas first enrolled as a medical student at the American University School of Medicine of the Caribbean in St. Maarten in May 2016.  Compl. ¶ 8. Gegas transferred to SMU on January 8, 2018. *Id.* ¶ 10.

SMU has a Clinical Medicine Handbook, which among other things sets forth the requirements that students must meet in order to sit for the USMLE exams.  Compl., Ex. F, pp. 229-32.  The operative version of the Handbook was updated as of May 3, 2021.  Compl., Ex. F.  It provides, in relevant part, that in order to demonstrate whether a student's preparation for the USMLE Step 2 CK exam has been successful, the student needs to take the CCSE.  *Id.*, p. 230.  SMU then determines in its discretion whether the student is ready to take the Step 2 CK exam or needs additional remediation.  *Id.*  In the latter case, the student must enroll in an SMU-approved remediation program and re-take the CCSE – a process that will be repeated "until such time as the student's level of achievement on the CCSE is deemed satisfactory" to SMU. *Id.*, pp. 233-34.

Although the CCSE covers similar content to the USMLE Step 2 CK examination, the NBME notes that "[m]any factors, including changing levels of knowledge and testing conditions, may result in a Step 2 CK score that is higher or lower than the estimated score" one obtains by taking the CCSE. Compl. Ex. C, p. 1.  The NBME also notes that scoring on the CCSE is not precise.  *Id.*  As a result, as the NBME recognizes, a student's score on any

particular CCSE does not predict whether a student will pass the USMLE Step 2 CK exam:  for example, the NBME notes that if a student took the CCSE at a time when the passing score on the USMLE Step 2 CK exam was 209,  a student who scored a 209 on the CCSE would be expected to score between 200 and 218 on the USMLE Step 2 CK exam two-thirds of the time, while one-third of the time the student would be expected to score outside of that range.  *Id*.

On June 8, 2020, SMU notified its students in an email communication that a passing score for the CCSE was 220.  Compl., Ex. L.  On August 31, 2020, SMU notified its students in an email communication that the CCSE passing score had been increased to 222.  Compl., Ex. L.  At no time, however, did SMU tell students that the CCSE score alone would determine whether a student was deemed ready to sit for the Step 2 CK exam; to the contrary, the Handbook at all times has continued to say only that a student must take the CCSE and that SMU would determine in its discretion whether a student is ready to sit for the Step 2 CK exam.  Compl., Ex. F.  In exercising that discretion, for example, SMU may take into account how many times a student has taken the CCSE, and whether the student needs to attain a higher score than the passing score in light of standard deviations.

On July 8, 2021, Gegas took her first CCSE exam.  Compl., ¶ 73; Ex. D, p. 1.  By her own admission, the attempt was unsuccessful: she scored a 208, below SMU's standards and well below the Step 2 CK mean of 245.  Compl.

¶ 73, Ex. D, p. 1.  In August and October 2021, Gegas took the CCSE test again and scored 211 and 210 respectively – again below SMU's standards and well below the Step 2 CK mean of 245.  Compl. ¶ 75; Ex. D, pp. 5-9.  Gegas took the CCSE two more times on December 18, 2021, and May 16, 2022, scoring 223 and 220 respectively.  Compl. ¶¶ 78, 80.  SMU exercised its discretion under the Handbook not to certify Gegas for the USMLE Step 2 CK exam.  Compl. Ex. F, pp. 233-34; Compl. ¶ 39.

Gegas alleges that because SMU has not certified her to take the USMLE Step 2 CK exam, she will not be able to participate in the Match this year and will suffer losses associated with waiting a year to participate in the next Match.  Compl. ¶ 84.

## Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The complaint must allege "enough facts to

raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In determining whether the Complaint states a plausible claim for relief, the Court need not credit bare legal conclusions unsupported by any factual allegations. *Iqbal*, 556 U.S. at 662, 678 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79. *See also Twombly*, 550 U.S. at 555; *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.").

## Argument

## I.   The Complaint Fails to State a Claim for Breach of Contract.

In Count I, Gegas alleges that the 2021 Handbook is a contract and that SMU breached it by "failing to certify [the] Plaintiff and allow her to take Part Two CK." Compl. ¶ 104-105. SMU does not dispute that the Handbook can have contractual effect, but the Complaint nevertheless fails to state a claim for breach of that contract.

"Under Florida law, the legal relationship between a private university and a student is 'solely contractual in character.'" *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (quoting *Jallali v. Nova Southeast Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). "The university 'may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college.'" *Id.* (quoting *Univ. of Miami v. Militana*, 184 So. 2d 701, 704 (Fla. 3d DCA 1966)). "These terms may be derived from university publications such as the student handbook and catalog." *Id.* (citing *Jallali*, 992 So. 2d at 342). "A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Id.* (citing *Jallali*, 992 So. 2d at 343).

"[I]mplicit in the university's general contract with its students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious." *Jallali*, 992 So. 2d at 343 (citing *Univ. of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 535 (Miss. 2000); *Mahavongsanan v. Hall*, 529 F.2d 448 (5th Cir. 1976); *Doherty v. S. Coll. of Optometry*, 862 F.2d 570 (6th Cir. 1988); *Nuttelman v. Case W. Reserve Univ.*, 560 F. Supp. 1 (N.D. Ohio 1981), *aff'd*, 708 F. 2d 726 (6th Cir. 1982)); *see also Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1562 (M.D. Ala. 1987) (university had right to modify graduation requirements in bulletin), *aff'd*, 858 F.2d 744 (11th Cir. 1988); *Coveney v. President & Trs. of*

*Coll. of Holy Cross*, 445 N.E.2d 136, 140 (1983) ("A college is 'clearly entitled to modify [its rules and regulations] so as to properly exercise its educational responsibility.'").

In the academic context, "judicial intervention in any form should be undertaken only with the greatest reluctance." *Doherty*, 862 F.2d at 576 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985)). "This is the case especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his [or her] chosen profession." *Id. See also McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) ("a private university has broad discretion in what rules and regulations it shall issue and how it enforces its rules.").

Gegas's claim for breach of contract fails because SMU had the inherent right to establish, modify, and administer its academic requirements and reserved the right to certify students for USMLE exams in its discretion. Gegas's complaint fails to raise a plausible allegation that SMU acted in an arbitrary and capricious manner, either in raising the presumptive passing score for the CCSE exam or in determining that Gegas had not demonstrated her readiness to take the Step 2 CK exam despite the fact that she (barely) achieved that score after multiple attempts.

With respect to SMU's raising of the presumptive passing score, Gegas concedes that the presumptive passing score of 220 was established well in advance of any relevant deadline that she had to meet with respect to the Match, Compl. ¶ 62, Ex. L, and it is beyond dispute that she was given sufficient notice and opportunity to meet the requirements and deadlines.

Moreover, Gegas's own allegations show that SMU's pre-testing retirements were rational and served a legitimate purpose; they were adopted to ensure that SMU students were prepared to take and would likely pass the USMLE Step 2 CK Exam, which is critical to students' Match opportunities. Compl. ¶¶ 59, 66.

As courts in Florida and elsewhere repeatedly have recognized, imposing just these types of requirements is rationally related to a medical school's "legitimate function of educating physicians." *Hughes*, 765 So. 2d at 542 (upholding medical schools' right to change its requirements for passing USMLE Step I exam); *see also Ku v. State of Tennessee*, 322 F.3d 431, 438 (6th Cir. 2003) (upholding requirement that medical student follow a particularized program of remediation before being allowed to reenter the program); *Catalan-Aguilar v. R3 Educ., Inc.*, No. CV 14-12607-GAO, 2015 WL 6043598, at *1 (D. Mass. Oct. 15, 2015) (upholding policy requiring approval of medical school administrators to sit for Step 2 CK exam upon satisfactory performance on NBME practice exams); *Jallali*, 992 So. 2d at 344 (university "was authorized

to change its degree requirements . . . to require students to pass the Comlex Level II exam within six years of matriculation"""); *Mahavongsanan*, 529 F.2d at 450 ("university's decision to require the comprehensive examination was a reasonable academic regulation within the expertise of the university's faculty"); *cf., Haberle v. Univ. of Alabama in Birmingham*, 803 F.2d 1536, 1541 (11th Cir. 1986) ("It may be unfortunate to spend years studying a discipline only to discover that one's capabilities do not pass academic muster.  However, the academic community requires a general comprehensive examination to determine whether or not a student is properly qualified for doctoral accomplishments.").

Nor is there any merit to Gegas's assertion that SMU acted in an arbitrary and capricious manner in determining that she was not ready to take the USMLE Step 2 CK exam, notwithstanding that she finally hit the presumptive passing score on the CCSE exam after multiple attempts.  The CCSE score report itself makes clear that a "passing" score can be used in conjunction with other information to assess a student's readiness to take the Step 2 CK exam Compl., Ex. D, p. 1, and SMU reserved its discretion to determine a student's readiness taking all relevant factors into account.  Compl., Ex. F, p. 233-34.  Gegas had taken the CCSE exam many times and still barely achieved a passing score.  SMU properly could exercise its discretion to determine that Gegas had not demonstrated her readiness to pass

the Step 2 CK exam.  For example, SMU properly could take into consideration the number of times Gegas had taken the practice exam; the overall trajectory of her scores, including the fact that her last score was lower than the penultimate score; and the fact that, as noted above, CCSE scores predict at best a general range of performance on the Step 2 CK exam, which even then a student on average will achieve only two-thirds of the time.  As noted above, courts are not to second-guess such academic judgments.  *Univ. of Miami*, 184 So. 2d 701 at 704.

Gegas's contract claims thus fail for the simple reason that she has failed to allege that SMU failed to comply with the clear and unambiguous language of the 2021 Handbook.  "When a contract is clear and unambiguous, the court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." *Snyder v. Florida Prepaid College Board*, 269 So. 3d 586, 592 (Fla. 1st DCA 2019).  Gegas has not plausibly alleged any breach of the contract based on SMU's failing to certify her to take the Step 2 CK exam.  *See Wohl Built, Inc. v. Maxum Indem. Co.*, No. 17-CV-80867, 2017 WL 10410373, at *2 (S.D. Fla. Dec. 21, 2017) ("[i]n order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached.").

Nor is there any merit to Gegas's complaint that SMU breached the contract by not permitting students who successfully met the ECFMG guidelines on the passing CCSE score to complete their medical education. Compl., ¶ 111. The ECFMG guidelines are merely that – ECFMG's view as to what it considers a passing score on the CCSE. They are not incorporated into the 2021 Handbook. SMU did not promise, in its Handbook or elsewhere, that a student who achieved a presumptively passing score on the CCSE would be allowed to sit for the Step 2 CK exam. To the contrary, SMU stated that it would make the determination whether a student would be certified in its discretion.

Moreover, if a particular CCSE score necessarily would result in certification, no discretion would be involved. It is axiomatic that contract language must be construed in a common-sense manner that gives meaning to the actual contract language. *Hatadis v. Achieva Credit Union*, 159 So. 3d 256, 259 (Fla. 2d DCA 2015) ("The goal in construing contract language is to reach a reasonable interpretation of the entire agreement in order to accomplish its stated purpose and meaning.") Gegas's contract claim would do just the opposite – denying SMU any discretion if a student obtained a particular CCSE score – and thus fails to state a claim upon for this reason as well.

II.   **The Complaint Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

In Count II, Gegas alleges that SMU breached the implied covenant of good faith and fair dealing in the 2021 Handbook when it "intentionally, deliberately, and consciously acted, or failed to act in the performance of its responsibilities" in "permitting students who successfully meet ECFMG guidelines to graduate and proceed forward with their graduate medical education." Compl. ¶¶ 110-11.

"The 'implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations.'" *Mangravite v. Univ. of Miami*, 838 F. Supp. 2d 1326, 1332 (S.D. Fla. 2011) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id.* (quoting *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). "[The Eleventh Circuit] has held that a claim for a breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id.*

As explained above, SMU did not breach any express Handbook term by requiring that students demonstrate their readiness to sit for the Step 2 CK exam, including through their performance on the CCSE practice

14

examination.  Therefore, Gegas's claim that SMU breached the covenant of good faith and fair dealing fails as a matter of law.

## III.    The Complaint Fails to State a FDUTPA Claim.

In Count III, Gegas alleges that SMU violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Compl. ¶¶ 112-117. The "FDUTPA is intended to 'protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quoting § 501.202(2), Fla. Stat.).  "A deceptive practice is one that is 'likely to mislead' consumers." *Id.* (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)).  "An unfair practice is 'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (internal quotations omitted)).

Count II fails to state a claim because it is entirely conclusory in nature. Gegas has not alleged any specific unfair or deceptive act or practice by SMU. To the extent Gegas's allegations are based on the fact that SMU has imposed pre-testing requirements for taking the USMLE Step 2 CK exam, the claim fails because SMU had the inherent right to establish, modify, and administer

15

its academic requirements, *McCawley*, 461 F. Supp. 2d at 1257, and the right to exercise discretion in applying those standards was part of the express terms of the Handbook. Compl. ¶ 66, Ex. F, pp. 230-31. Where courts in Florida and across the country recognize the inherent right of educational institutions to formulate and change their academic requirements, as discussed above, such a practice cannot be said to be misleading or "immoral, unethical, oppressive, unscrupulous or substantially injurious." § 501.202(2), Fla. Stat.

Gegas's conclusory allegation that SMU's "website" is used to misinform and deceive prospective students, Compl. ¶ 115, also fails to state a FDUTPA claim. Gegas alleges that the "Frequently Asked Questions" section of the website (the "FAQ") deceptively omits SMU's CCSE pre-exam requirements. Compl. ¶¶ 95, 115. SMU's website does not purport to contain, and need not contain, all the educational or testing policies of SMU. *Kickertz v. New York Univ.*, 110 A.D.3d 268, 273 (N.Y. 2013) ("Plaintiff's [case] was correctly dismissed because plaintiff cannot establish that NYU had a duty to describe every aspect of its prospective graduation requirements and potential future curriculum changes in the dental program to applicants in precise detail.").

Gegas also alleges that SMU's Catalog makes no mention of the CCSE pretesting requirements. Compl. ¶ 94. Gegas, however, does not allege that this document constitutes part of SMU's contract with her, nor could she. The document contains a disclaimer that "[t]he information in this catalog is

16

subject to change.  Such changes may be without notice.  Potential students should not consider this catalog to represent a contract between St. Matthew's University and an entering student." Compl. Ex. I, p. 28.  Gegas also does not even allege that she received or read this document prior to deciding to enroll at SMU.

## IV.   The Complaint Fails to State a Claim for Fraud.

In Count IV, Gegas alleges that SMU made false statements of material fact and misrepresentations about its testing and graduation requirements, which induced her to transfer to SMU.  Compl. ¶ 119.

To state a claim for fraudulent misrepresentation, the Complaint must allege: "(1) a false statement concerning material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).  "A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879–80 (Fla. 4th DCA 2000).  "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them."

17

*Id.* (quoting *State v. Mark Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995), *approved by*, 698 So. 2d 533 (Fla. 1997) (citation omitted)).

In addition, fraud claims must be pled with particularity.  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").  The purpose of Rule 9(b) is to give defendants fair notice.  *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997).  The requirements of Rule 9(b) are met only if the complaint states: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997).  "A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019).

Gegas fails to allege with any particularity any statements in the Handbook or otherwise that were false.  Compl. ¶¶ 118-23.  To the extent Gegas relies on the same Handbook sections underlying her breach of contract claims, those claims fail for the reasons stated above; the Handbooks allowed SMU to impose additional pre-testing requirements on Gegas; SMU had the

inherent right to establish, modify, and administer its academic requirements, *McCawley*, 461 F. Supp. 2d at 1257, and, on their face, they do not contain any false statements. *See Estrada v. St. Matthew's Univ.*, Civil Action No. 6:20-cv-1763-CEM-EJK, ECF No. 41, at p. 15 (M.D. Fla. Sept. 1, 2021) (construing the Handbook provisions at issue in this case and finding they did not contain any false statement). Moreover, the allegations amount to no more than an impermissible attempt to restate breach of contract claims as fraud claims. *See CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *10 (M.D. Fla. Feb. 15, 2018).

To the extent Gegas relies on the same allegations underlying her FDUTPA claim, Gegas's allegation that the website contains false statements of material fact also fails to state a plausible claim for relief because it is self-evident that the statements are true. Gegas alleges that SMU uses its website and downloadable materials to misinform and deceive potential students. Compl. ¶ 115. However, SMU did not undertake the duty to address every testing prerequisite in its website. *See Kickertz v. New York University*, 110 A.D.3d 268 (N.Y. 2013) (NYU had the right to implement the PMV requirement, designed in part to provide students with practical experience, without advertising all relevant details to prospective students.) Nor has Gegas alleged any fiduciary or other relation of trust or confidence between herself and SMU that would create a duty to disclose additional information. Gegas also has

not alleged with any particularity how she relied on the statements, including when she allegedly read the statements and how she relied on them.

## V.   The Complaint Fails to State a Claim for Declaratory Judgment.

The Court should dismiss the claim for declaratory judgment because Gegas has failed to identify a "real and present controversy" as required by the Federal Declaratory Judgment Act.  28 U.S.C. §2201(a); *see also People United for Medical Marijuana v. Florida Dept. of Health*, No. 2017CA001394, 2018 WL 2447102, at \*5 (Fla. Cir. Ct. May 25, 2018) (a "declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts").  Gegas requests declarations relating to whether SMU's prior conduct was proper.  Moreover, Gegas does not specify what declaration she seeks as it relates to the parties' rights going forward.  As such she has failed to present the Court with a present controversy that is susceptible to a declaratory judgment.

## VI.   The Complaint Fails to State a Claim for Injunctive Relief.

Gegas's claim in Count VI  for injunctive relief does not set forth any legal basis for the claim, nor does it allege that she lacks an adequate remedy at law and, as such, it fails to state a claim for which relief may be granted. *See Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012).  Likewise, Gegas's request for equitable relief fails because she does

not allege irreparable harm.  *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (a party does not suffer irreparable harm if "[t]here is nothing to suggest that harm suffered between the time of suit and the time of ultimate decision in this case would seriously prejudice [mover's] opportunity for full recovery").

## Conclusion

The Plaintiff's Complaint should be dismissed with prejudice.

### **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to LR 3.01(G), undersigned counsel conferred with opposing counsel by telephone on March 23, 2023 and by email on March 24, 2023 in attempt to resolve or narrow the issues prior to the filing this Motion, in good faith.  The undersigned counsel confirmed Plaintiff opposes the relief sought in this Motion.

March 24, 2023                          LOCKE LORD LLP

By       */s/ Dale A. Evans Jr.*
         Dale A. Evans Jr.
         Florida Bar No. 98496
         LOCKE LORD LLP
         777 South Flagler Drive
         East Tower, Suite 215
         West Palm Beach, FL  33401
         Telephone: (561) 833-7700
         Facsimile:  (561) 655-8719
         dale.evans@lockelord.com

         *Counsel for Defendant St. Matthew's University School of Medicine*