**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DANIELLE MARIE GEGAS,**
  **Petitioner,**

 v.          Case No: 6:22-cv-2299-PGB-EJK

**ST. MATTHEW'S UNIVERSITY**
**SCHOOL OF MEDICINE,**
  **Defendant.**
_____/

**PETITIONER'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Through undersigned, Petitioner timely opposes Defendant's Rule 12(b)(6), *Fla. R. Civ. P.,* Motion to Dismiss for failure to state a claim and states:

**Summary**

The controversy is about a pre-test score, required by Defendant medical school, that has no bearing on Petitioner medical student's eventual state licensure and that provides nothing other than a predictive self-assessment metric before Petitioner takes Part 2 of the United States Medical Licensing Exam (Part 2), which is necessary for medical licensure, *Comp. ¶¶ 26-36.* But, while no other medical school in the United States requires either this pre-test or any set score, Defendant requires that Petitioner achieve a score exceeding that required by the manufacturer. *Comp. ¶¶ 52 & 58.*

Whether Defendant acted in an arbitrary and capricious manner, breaching its agreement with Petitioner and causing harm when it required a pre-test score

1

significantly exceeding that set by the pre-test manufacturer and/or whether Defendant acted in an arbitrary and capricious manner when, despite having exceeded Defendant's required pre-test score, Defendant continued to prevent Petitioner from successfully completing her remaining graduation requirements, graduating, and entering the Residency Match. *See. Comp. generally*.

Or whether Defendant possessed sufficient discretion to alter its required pre-test scores at will, apply separate standards to Petitioner, and effectively prevent completion of Petitioner's remaining graduation requirements while forcing her to remain in school paying tuition, fees, and living expenses despite Petitioner's having already exceeded Defendant's pre-test score, passing all required coursework, and having, "proven to herself and to others that she is a highly capable student who is focused and performs well," *Comp. generally, ¶¶1,7, 14 and Exs. A & B* defines the present controversy.

The United States Medical Licensing Examination(USMLE) consists of three parts, including Part 2, and is jointly owned by the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners (NBME). *See Comp. ¶¶25-27 and see ( https://www.usmle.org/about-usmle last accessed April 12*, 2023). Before the Covid-19 Pandemic, Part 2 was administered in two sections: a hands-on clinical skills model-patient section, which is not now being administered and a multiple-choice clinical skills examination. *Comp. ¶¶ 26-27*. The NBME publishes the pre-test in question as a predictive metric to provide students with some form

of self-assessment assessing students' readiness to take Part 2, *See https://www.nbme.org/examinees/nbme-self-assessments/comprehensive-clinical-science-self-assessment, last accessed April 12, 2023,* and see *Comp. Ex. D.*

Petitioner's pre-test scores speak for themselves. Petitioner exceeded Defendant's own enhanced pre-test score requirement in December 2021. And Petitioner exceeded the pre-test manufacturer's passing score in September 2021, October 2021, December 2021, May 2022, and July 2022. Yet, Defendant refused to allow Petitioner too take Part 2 and prevented her completion of the remainder of her graduation requirements. *Comp. Ex. D. and Ex. D., summarized below.*

| Pre-test Date | Defendant Passing Score | Publisher Passing Score | Petitioner Actual Score |
|---|---|---|---|
| July 15, 2021 | 220 | 209 | 208 |
| September 2, 2021 | 222 | 209 | 211 |
| October 22, 2021 | 222 | 209 | 210 |
| **December 18, 2021** | **222** | **209** | **223** |
| May 16, 2022 | 222 | 209 | 214 |
| July 8, 2022 | 222 | 209 | 220 |

*Comp. Exhibit D Summary*

Notably NBME's passing 209 score remained consistent and significantly below that required by Defendant, 220 then 222. After failing the pre-test on her first attempt with a score of 208, petitioner was forced to take the pre-test three more times until she passed in December 2021 before again being forced to take the pre-test two more times. *Comp. ¶¶ 57-59.* Since the pre-test itself is not required for licensure in any state of the United States, *Comp. ¶59,* is generally not reportable anywhere to anyone except to Defendant, and has no reported bearing on

3

licensure, success, or the successful practice of medicine, *Id,* the only apparent use seems to allow Defendant to continue to collect tuition and fees, prevent its students from graduating, and arguably as a marketing tool to attract future students. Petitioner alleged that if she had known of the pre-test before transfer, she would not have attended Defendant's school.  *Comp. ¶¶14 & 53-74.*

Inexplicably, Petitioner exceeded the pre-test score required by Defendant in December 2021 yet was still denied access to Part 2. *Comp. ¶¶53-74 and see Comp. Exhibit L.* Defendant itself published a passing pre-test score of 220 on or about June 8, 2021 (*Id.*) and then arbitrarily increased that passing score requirement two months later to 222 on or about August 31, 2021 (*Id.*). And, while Defendant strenuously argued that its actions were neither arbitrary nor capricious, but rather were discretionary, Defendant still failed to permit Petitioner's access to Part 2 when Petitioner met Defendant's own published criteria and while Defendant itself praised Petitioner's clinical skills and acumen, *See Comp. Exs. A&B.,* with Defendant's Dean of Clinical Sciences and Surgery Chairman stating:

> "[Petitioner's] steadfast and focused commitment to the study of medicine is reflected by her tenacious and successful completion of her education despite multiple events of adversity…[Petitioner] exemplified maturity and dependability during her clinical rotations. She fulfilled her responsibilities in an exceptional manner…[Petitioner] met all…objectives for professionalism…[and] has proven to herself and to others that she is a highly capable student who is focused and performs well in all circumstances. She has demonstrated an understanding and proficiency in each of our school's core competencies. She has earned high praise in all of her clinical rotations and demonstrated overall excellence relative to her

4

peers…[Dr. Salter] predict[s] that [Petitioner] will carry these strengths into her residency training and contribute greatly to the program, her colleagues, her teachers, and her patients. [Petitioner's] transcript documents that she is a truly outstanding student in every way." *See also Comp. Exs. B & E.*

Petitioner also complied with Defendant's requirement, *Comp. ¶¶64 &75*, that she complete approved independent test-preparation courses after failing the first pre-test. After completing one of these courses, a review indicated, "[Petitioner] was a model student and got a great deal from the workshop. I was very impressed with her overall and expect her to do great things with the tools taught to her once she has had time to train with them and implement them. She is now poised to train independently moving forward as she prepares for her [second step of the licensing examination]. *Comp. Exhibits H and G.*

Defendant's Catalog, *Comp. Exhibit I,* p. 25, clearly listed graduation requirements as including:  Students must successfully complete: (1) All basic science courses; (2) 42 weeks of third year core clinical rotations; (3) NBME Core Clerkship examinations; (4) All clinical rotation log books (5) 30 weeks of fourth year elective rotations; (6)Defendant's receipt of satisfactory evaluation forms from each preceptor; (7) Passing scores on the USMLE Part 1 and Part 2; (8) Intent to Graduate Form; (9) Clear balance with student accounts; (10) Pre-graduation questionnaire; and (11) ECFMG certification. Defendant however, failed to inform prospective students that it required a pre-test with a score far exceeding that required by the NBME. *Comp. ¶74.* Petitioner successfully completed all

5

requirements published in the Catalog up to taking Part 2. But Defendant prohibits Petitioner's completion of the remaining requirements until after Part 2.

## Standard of Review

Rule 8(a)(2) requires, "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* The Eleventh Circuit reviews Rule 12(b)(6), *Fed. R. Civ. P.,* Motions to Dismiss *de novo*, "accepting the allegations in the Comp. [and its attachments] as true and construing them in the light most favorable to the plaintiff." *Timson* v. *Sampson*, 518 F.3d 870, 872 (11th Cir. 2008) (quoting *Glover* v. *Liggett Group, Inc.,* 459 F.3d 1304, 1308 (11th Cir.2006). "To survive a motion to dismiss, a Comp. need not contain 'detailed factual allegations,' but it must contain sufficient factual allegations to suggest the required elements of a cause of action [that are plausible on their face]." *Mukamal* v. *Bakes*, 378 Fed. Appx. 890, 896 (11th Cir. 2010)(quoting *Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544 (2007); and *Watts* v. *Fla. Int'l Univ.,* 495 F.3d 1289, 1295–96 (11th Cir. 2007) While, "[t]he scope of the review must be limited to the four corners of the Comp.," *St. George* v. *Pinellas Cnty., 285 F. 3d 1334, 1337 (11th Cir. 2002),* a court's acceptance of allegations as true, "is inapplicable to legal conclusions…and threadbare recitals of the elements of a cause of action." *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009).

## Argument Opposing Defendant's Rule 12(b)(6) Motion to Dismiss

Petitioner alleges that Defendants conduct was arbitrary and capricious conduct first by initially having one pre-test score requirement that significantly

6

exceeding the score published by the NBME, then by increasing that score to greater excess, all while neither publishing nor providing any rational basis for such excessive scores used for self-assessment purposes only. Similarly, when Petitioner exceeded Defendants enhanced pre-test score requirement, met or exceeded all other published conditions precedent, and obtained excellent clinical reviews, that Defendant once again placed Petitioner on double secret probation continuing to deny access to Part 2 and forcing her to remain a student.

In *McCawley*, the Southern District held that a University did not act arbitrarily and capriciously when it failed to confer a doctorate upon a student that admitted to violating institutional norms and acceptable standards of ethical behavior. *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1253 (S.D. Fla. 2006). Unlike *McCawley*, Petitioner was never accused of, nor ever admitted to, violating any institutional norms or involvement in any unethical behavior(s). After failing her first pre-test, Petitioner successfully completed all other graduation requirements, passed all courses, had excellent reviews, passed the pre-test according to Defendant's elevated standard in December 2021, and in fact passed the pre-test five times in total according to NBME's passing score.

Petitioner's experience also differs from an Eleventh Circuit case that addressed whether a medical school acted arbitrarily and capriciously in dismissing a student when that student, "Failed to show that any of the [disciplinary] procedures…were mandatory and/or exclusive, and fail[ed] to

7

establish that [the defendant's] decision to apply (the specific procedure) was arbitrary, malicious, or in bad faith." *Sirpal v. Univ. of Miami*, 509 Fed. Appx. 924, 929 (11th Cir. 2013)(unpublished). Here, unlike in *Sirpal,* it is precisely because Defendant's actions as alleged in the Complaint plausibly support a basis for finding that Defendant acted arbitrarily and capriciously that Petitioner's Allegations state claims upon which relief may be granted.

Importantly, Petitioner's Complaint also alleges that Petitioner: would not have transferred if she had known about Defendant's pre-test score policies in advance (*Comp.* ¶¶*14, 45, 46, 55, )*; prevented Petitioner and other students from graduating and thereby increasing its receipt of tuition and fees (*Comp.* ¶¶*17, 38)*; that neither the NBME nor the ECFMG require the pre-test (*Comp.* ¶*41)*; and that Defendant's policies harmed Petitioner (*Comp. 84)*; Ultimately while Defendant argues its discretion to prohibit Petitioner's taking Part 2, Defendant's own Dean of Clinical Sciences appears to disagree; given Petitioner's exemplary transcript and *curriculum vitae*; given Petitioner's evaluation by an approved independent test-preparation company; and given the fact that Petitioner achieved a passing score on the pretest in December 2021.

### Count I, Breach of Contract Should Not Be Dismissed Because Petitioner Met Her Burden

Throughout her Complaint, Petitioner alleged that: Petitioner and Defendant possessed a contract between them, that Defendants actions

demonstrated arbitrary and capricious conduct; that Defendant breached the terms of that contract including at least one explicit term (the 222 pre=test score requirement that Petitioner met in December 2021), that Petitioner was harmed as a direct result of Defendants breach, and that Petitioner sustained economic and non-economic damages related to Defendant's breach(es).

Defendant's Motion appeared to admit that Contract Law governed its relationship with Petitioner by first admitting that Petitioner was an enrolled student and in its private medical school and that it had handbooks, catalogs, and correspondence applicable to Petitioner. *Motion* p. 8. Quoting *Sirpal* at 929, Defendant argued under Florida Law that the legal relationship between student and private school is solely contractual in nature. *Id.* And school publications define explicit contract terms between student and private school, *Jallali* v *Nova Southeast Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008).

Given the allegations then, Petitioner appears to have raised plausible allegations regarding a contractual relationship between Petitioner and Defendant. And because a court may intervene when a private university acts arbitrarily and capriciously, *Id.* at 343, provided this Court finds sufficient plausible allegations sufficient to support a finding that Defendant acted in an arbitrary and capricious manner, this Court may intervene, evaluate, and enforce the contracted terms between Petitioner and Defendant.

While not party to this or action, in an eerily similar controversy, this Court previously found Defendant's actions related to its mandatory pre-test standards arbitrary and capricious. On September 1, 2021, in *Estrada v. St. Matthew's University School of Medicine,* (*unpublished*) case 6:20-c-01763-CEM-EJK, Doc. 41, in ruling on St. Matthew's University School of Medicine (SMU) Motion to Dismiss, this Court entered an Order Denying in Part and Approving in Part SMU's Motion determining that Estrada's allegations were adequately pleaded to support its allegation that SMU acted arbitrarily and capriciously. *Exhibit A pps.8-10.*

Like Defendant's argument in *Estrada,* Defendant's argument that it reserved it right to modify its requirements despite its arbitrary and capricious conduct should be held unpersuasive here as well. Florida Courts recognize that the contractual legal relationship between students and colleges and universities is derived from [all] university publications such as catalogs and handbooks that govern student behavior. *Jallali* v. *Nova Se., Univ. Inc.,* 992, So. 2d 338, 342 (Fla. 4th DCA 2008)(quoting *John B. Stetson Univ.* v. *Hunt,* 102 So. 637, 640 (Fla. 1924)). Since Defendant published this catalog, and since it was admittedly a university publication, it should be part of the contract between student and private school, whether the student reads it.

Petitioner pled the existence of a contract between Petitioner and Defendant. Petitioner provided a copy of the documents published by Defendant and alleged that such documents constituted a contract. And throughout her Complaint,

Petitioner averred that Defendant clearly published pre-test requirements well in excess of those required by the NBME. Despite meeting that score criteria, and despite excellent clinical evaluations, Defendant still failed to permit Petitioner access to taking Part 2.

Because the four corners of the Complaint appear to plausibly allege that Defendant engaged in arbitrary and capricious conduct, because Petitioner was a student of Defendants, because there existed catalogs, handbooks, and other writings governing their relationship, and because Petitioner specifically alleged that Defendant actually harmed her by breaching the terms of its contract with her when Defendant (1) ignored Defendant's own published pre-test requirements that Petitioner exceeded in December 2021; (2) ignored Petitioner's academic transcript, course evaluations, and other test scores; (3) ignored the overall clinical evaluation drafted by Defendant's own Dean of Clinical Sciences and Surgery Department Chairman; and (4) ignored the terms of its own publications, Defendant's Motion to Dismiss Count I should be denied.

### Count II, Breach of an Implied Covenant of Good Faith and Fair Dealing Should Not Be Dismissed Because Petitioner Met Her Burden.

Petitioner agrees with Defendant, *Motion p. 14,* that, "The implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations." *Mangravite* v. *Univ. of Miami,* 838 F. Supp. 2d 1326, 1332 (S.D.. Fla. 2011)(quoting *Cox* v. *CSX Intermodal, Inc.,* 732 So. 2d 1092, 1097 (Fla. 1st

DCA 1999)). So, while Defendant published a pre-test passing score requirement significantly exceeding that required by the NBME, Petitioner exceeded that requirement in December 2021 and possessed a reasonable expectation that given her excellent clinical evaluations and performance that she would be permitted to take Part 2. But Defendant failed to fulfil its own contract terms related to its own enhanced passing pre-test score and continued to deny Petitioner access to Part 2 even after Petitioner exceeded Defendants score requirement.

Since, "breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to a specific contractual obligation," *Id.* (quoting *to Centurion Air Cargo, Inc.,* v. *United Parcel Serv. Co.,* 420 F. 3d 1146, 1151 (11th Cir. 2005), and because "[The Eleventh Circuit] has held that a claim for breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of an express term of a contract," *Id,* Defendant's Motion should be denied because Defendant breached an express term related to its pre-test score requirement that Petitioner exceeded in December 2021.

Further, because "the court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." *Motion* p. 12 citing, *Snyder* v. *Florida Prepaid College Board*, 269 So. 3d 586, 592, (Fla. 1st DCA 2019), this Court should permit the plausibly pled allegations that Defendant acted in bath faith when it continued to refuse Petitioner access to taking Part 2 despite

Petitioner's having exceeded Defendants' stated cut-off for pre-test passage. And Defendant's Motion to Dismiss Count II should be denied.

### Count III, Defendants' Fraudulent, Deceptive, and Unfair Trade Practices Should Not Be Dismissed Because Petitioner Met Her Burden

Contrary to Defendant's argument to dismiss this claim for Fraudulent, Deceptive, and Unfair Trade Practices (FDUPTA), Petitioner alleged that Defendant's student handbook implied that satisfactory completion of all preconditions to graduation would lead to a medical degree. *See Complaint generally.* But, given Defendant's apparent arbitrary and capricious actions, because Defendant provided no rational basis to exceed the NBME's pre-test passing score requirements, because Defendant's score requirements significantly exceeded those published by the NBME, because Defendant arbitrarily increased those requirements and then arbitrarily and capriciously failed to consider their own enhanced pre-test score requirement when Petitioner exceeded that requirement, plausibly, Defendant's conduct, as pled demonstrated unfair, deceptive, and fraudulent trade practices by enticing student enrollment and then imposing irrational bars to their ability to graduate. Irrational because the pre-test has no other purpose or use than for student self-assessment. *See https://www.nbme.org/examinees/nbme-self-assessments/comprehensive-clinical-science-self-assessment, last accessed April 12, 2023*

13

While Florida and other jurisdictions do recognize the inherent right of educational institutions to formulate and change academic requirements, such changes may not be conducted in an arbitrary and capricious manner. Petitioner's allegations plausibly support a finding of "unethical, oppressive, unscrupulous, and/or substantially injurious," §501.202(2) *Fla. Stat.,* behavior on Defendant's part. Without the ability to take Part 2 of the licensing examination, Petitioner cannot participate in the Match, cannot graduate, and cannot earn a living from medicine or repay her student loans. Further such a delay in graduation will result also cause irreparable harm indicating that Petitioner was, for some inapparent reason, not able to graduate medical school in four years.  Because Petitioner plausibly pled sufficient allegations to support a FDUPTA claim, Defendant's Motion to Dismiss Count III should be denied.

**Count IV, Fraud Should Not Be Dismissed Because Petitioner Met Her Burden**

Petitioner met her burden to plead fraud with particularity when she alleged that Defendant published a pre-test passing score of 222 and then electively chose to ignore that criteria and instead order one in secret applicable only to Petitioner. Petitioner chose to attend Defendant's medical school because nothing she was initially provided with, *Complaint ¶14,* clearly indicated that Defendant could delay, alter, or prohibit her progress for an indeterminate time while requiring that she continue to pay tuition, and fees.

Given Defendant's experience with other students, such as in *Estrada,* and given Defendant's reliance on its seeming belief that it might change anything at any time subject to its own absolute discretion, Defendant knew or should have known that it was providing false statements. Certainly, given Defendant's publication of one E-mail stating that pre-test score requirements were raised to 220 and then, two months later, raising those requirements to 222, despite being aware of the 209 cut off considered a passing score by the pre-test manufacturer, also suggests that Defendant knew or should have known that it was falsely denying Petitioner's access to Part 2. *See Complaint generally and ¶¶64-74.*

Throughout, Petitioner relied upon Defendant's published papers and documents. Petitioner relied on a passing score of 222, *Id.,* and plausibly alleged that had Petitione known she would neither have enrolled nor matriculated in Defendant's school. Finally, Petitioner alleged that she was injured by having to remain in school longer pay tuition and fees, pay living expenses, and now be separated from her spouse for post-graduate medical training. Because Petitioner plausibly alleged damages stemming from her reliance upon Defendant's fraudulent conduct, Petitioner's allegations appear sufficiently particular to allow Defendant an appropriate defense. As a result, Petitioner respectfully requests that the Court deny Defendant's Motion to Dismiss Count IV.

### Count V, Declaratory Action Should Not Be Dismissed

Petitioner plausibly pled a *bona* fide actual and present controversy related to her inability to enter the couples match in 2021 with her husband and that she has now been prevented from graduating and entering the Residency Match for at least four years and because throughout her Complaint, Petitioner detailed Defendant's specific actions causing harm. *Comp. generally and* ¶¶*10-11, 126-131.* Further, given that Petitioner met Defendant's pre-test requirements in December 2021 and has since been prevented from taking Part 2, this controversy appears ripe and ready for resolution.

Given Defendant's arbitrary and capricious actions, Petitioner seeks this Court's declaration(s) to be made fully whole. Further, Petitioner believes the facts of this case and applicable law support this Court's Declarations to protect Petitioner's future interests to help explain her prolonged stay in medical school for purposes: of post-graduate medical education Residency Match; for state licensing boards; insurance carriers (both professional liability and third-party payors); employers; and healthcare facilities who will all be concerned and require something in writing about why Petitioner's medical education exceeded the normal four years. *See Complaint and* ¶*135.*

If Petitioner should prevail, her request for Declaratory Judgment will permit a more complete remedy and relief than would be available if Plaintiff prevailed solely on her Breach of Contract Claim which would only provide an

incomplete remedy. *See Kenneth F. Hackett & Assoc., Inc., v. GE Capital Info. Tech. Sols., Inc.,* 744 F. Supp 2d 1305 (S.D. Fla. 2010) and see *Hannon v. Delaware Am. Life Ins. Co.,* 6:14-CV-301-ORL-40KRS, 2014 WL 12618716, at *3 (M.D. Fla. Oct. 2, 2014). Petitioner seeks declarations that:  if made by the Court will provide relief that Petitioner's Breach of Contract will not provide. As a result, Petitioner respectfully requests that this Court deny Defendant's Motion as to Count V.

### Count VI, Injunctive Relief, Should Not Be Dismissed Because Petitioner Met Her Initial Burden

Petitioner plausibly pled being irreparably harmed as a direct result of Defendant's actions. *See Complaint.* Recognizing that Defendant maintains its own control over Petitioner for a period that extends long after this case is resolved, Petitioner seeks this Court's equitable intervention to prohibit further arbitrary and capricious actions.

Equitable relief is also necessary because a monetary award cannot wholly remediate: (1) the time the  Plaintiff lost; (2) Petitioner's inability to complete the couples match with her husband; (3) explain the delay in her graduation to licensing boards; insurance carriers (both professional liability and third-party payors); employers; and healthcare facilities; (4) future Residency Match success given the delay; (5) the real fear that Defendant will once again prohibit graduation based on some secret, not-ascertainable criterion; and (6) that Defendant may elect

to undertake some false disciplinary procedure and/or remove Petitioner from school.

Defendant concluded that Petitioner failed to plead irreparable harm. Yet the delay caused by Defendant has caused Petitioner not only to be unable to enter the couples match with her husband but subjected the Petitioner to the harm(s) listed above. Finally, and since the Complaint was filed, Petitioner's credit is now in jeopardy because Defendant notified loan companies that Petitioner is not a full-time student, and her student loans will no longer be held in forbearance. Petitioner will now have to begin paying her student loans, most of which were paid to Defendant, , and will be unable to earn a living, begin her post-graduate medical education, or find employment as a result of Defendant's actions. As a result, Petitioner respectfully requests that this Court deny Defendant's Motion as to Count VI.

### Defendant's Conclusion that Petitioner's Entire Comp. Should Be Dismissed With Prejudice Should be Denied

In the absence of citing any supporting law, Defendant concludes that Petitioner's Complaint should be dismissed with prejudice. When the Eleventh Circuit evaluates Rule 12(b)(6) Motions to Dismiss, it:

> [Considers that] a district court's discretion to dismiss a Comp. without leave to amend is "severely restricted" by Rule 15(a)(2), [mandating] that leave to amend, when requested by the plaintiff, "be freely given when justice so requires." *(Bryant*, 252 F.3d at 1163)…In cases where the plaintiff has acted in good faith and has not been given a first chance to amend its initial Comp., we have

treated dismissal with prejudice as a remedy of last resort. *See, e.g., Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993) … And we…espoused the view that, "where a more carefully drafted Comp. might state a claim," the district court should grant a plaintiff at least one chance to amend its Comp. before dismissing the action with prejudice. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (requiring district courts to grant *sua sponte* all plaintiffs at least one opportunity to amend), *overruled by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). *Eiber Radiology, Inc.* v. *Toshiba Am. Med. Sys., Inc.*, 673 Fed. Appx. 925, 929 (11th Cir. 2016)

Respectfully then, should this Court strike any or all Counts, Petitioner seeks leave to amend her pleadings in a reasonable time. Petitioner seeks such leave to amend in good faith to correct a perceived injustice, where the amendment should not be futile, for the purpose of delay, or to unduly prejudice any Party.

## Conclusion and Relief Requested

Petitioner respectfully requests that for the reasons cited above, this Court deny Defendant's Motion to Dismiss and order Defendant to Answer Petitioner's Comp. within 20 days. Recognizing this Court's discretion to strike any or all counts in Petitioner's Comp., Petitioner respectfully requests that if this Court does strike any or all Counts that Petitioner be provided with a first opportunity to amend the Complaint.

## Local Rule 3.01(g) Certification

Pursuant to LR 3.01(G), undersigned conferred with opposing counsel on April 13, 2023, by telephone in an unsuccessful attempt to resolve the Parties'

differences. Defendant declined to withdraw its Motion to Dismiss and undersigned filed this Response in good faith.

## Certificate of Service

I certify that a true and correct copy of the foregoing Response in Opposition to Defendant's Motion to Dismiss was filed via CM/ECF where a copy was provided to the Clerk. A true and correct copy of this Response will be provided to Defendant's Counsel by electronic service to: dale.evans@lockelord.com; Tina.Sullivan@lockelord.com; and autodocket@lockelord.com.

**Respectfully submitted this 14th Day of April 2023**

        **The Florida Legal Advocacy Group of Tampa Bay**
        _/s/  Adam S. Levine_
        Adam S. Levine, M.D., J.D.
        Florida Bar #78288
        1180 Gulf Blvd., Suite 303, Clearwater, FL 33767
        (727) 512 – 1969 [Phone]
        (866) 242 – 4946 [Facsimile]
        aslevine@msn.com [Primary E-mail]
        alevine@law.stetson.edu (Secondary E-mail)
        Attorney for Petitioner