UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| DANIELLE MARIE GEGAS, <br><br> Plaintiff, <br><br> v. <br><br> ST. MATTHEW'S UNIVERSITY SCHOOL OF MEDICINE, <br><br> Defendant. | Civil Action No: 6:22-cv-2299-PGB-EJK |

**DEFENDANT ST. MATTHEW'S UNIVERSITY
SCHOOL OF MEDICINE'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Danielle Gegas, a student at St. Matthew's University School of Medicine ("SMU"), asks this Court to enter a preliminary injunction restraining SMU from enforcing its examination preparation policies and requiring SMU to certify her to sit for the USMLE Step 2 CK examination. SMU requests that the Court deny Plaintiff's request because Plaintiff is unlikely to succeed on the merits of her case and will not suffer irreparable harm should the motion be denied.

**Introduction and Factual Background**

Plaintiff seeks an injunction that would allow her to avoid the express requirements of SMU's Clinical Medicine Handbook (the "Handbook"). The Handbook, among other things, sets forth the requirements that students must meet in

order to sit for the United States Medical Licensing Exams ("USMLE"). Declaration of Maurice Clifton, ¶ 2, attached as Exhibit 1. Students at international medical schools such as SMU must pass the USMLE in order to obtain certification from the Education Commission for Foreign Medical Graduates ("ECFMG"), which is necessary to practice medicine in the United States. Decl., at ¶ 3. At issue in Plaintiff's motion is the USMLE Step 2 CK, which assesses an examinee's ability to apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision and includes emphasis on health promotion and disease prevention. *See Step 2 CK*, UNITED STATES MEDICAL LICENSING EXAMINATION, *https://www.usmle.org/step-exams/step-2-ck* (last visited August 17, 2023).

SMU's Handbook provides, in relevant part, that before SMU will approve a student to sit for the Step 2 CK exam, the student must demonstrate their readiness by successful performance on the Comprehensive Clinical Science Subject Exam ("CCSE") produced by the National Board of Medical Examiners ("NBME"). Compl., ECF 2-8 at 233.[1] ; see also Decl., at ¶ 4. After the student takes the CCSE exam, SMU determines in its *sole* discretion whether the student is ready to take the Step 2 CK exam or needs additional remediation. *Id.* If a student demonstrates that their preparation for the Step 2 CK exam has been successful, the student then must sit for and pass Step 2 CK in order to become eligible to participate in the National

---

[1] References to ECF pagination are to the ECF page numbers in the upper right-hand portion of the document.

2

Residency Matching Program ("the Match"), which is conducted annually. Decl., at ¶ 6. Successful completion of the Step 2 CK, however, is just one element of several that must be satisfied in order to participate in the Match. Decl., at ¶ 7.

Plaintiff first took the CCSE exam on July 15, 2021. ECF No. 2, ¶ 73; ECF No. 2-6 at 1. By her own admission, the attempt was unsuccessful: she scored a 208, below SMU's standards and well below the Step 2 CK mean of 245. ECF No. 2, ¶ 73, ECF No. 2-6 at 1. In September and October 2021, Plaintiff took the CCSE again and scored 211 and 210 respectively—again below SMU's standards and well below the Step 2 CK mean of 245. ECF No. 2, ¶ 75; ECF No. 2-6 at 5-9. Plaintiff took the CCSE three more times on December 18, 2021, May 16, 2022, and July 8, 2022, scoring 223, 214, 220 respectively. ECF No. 2, ¶¶ 78, 80; ECF No. 2-6 at 13-21.

For this reason, Plaintiff has been doing remedial work, with SMU's assistance and support, in an effort to become ready for the Step 2 CK. SMU does not receive additional tuition and fees as a result of Plaintiff's failure to achieve a satisfactory score on the CCSE. SMU provides remedial support for CCSE preparation at no additional charge to students. Students pay tuition for their basic science and clinical courses, and once that tuition is paid, there is no additional charge from SMU for remaining in the clinical program during remedial work and qualifying exams such as those Plaintiff is undertaking. Simply put, there is no financial advantage to SMU to withholding its approval for Plaintiff to take the Step 2 CK exam. In fact, the opposite is true. If solely motivated by financial gain, SMU would allow students from whom it has collected all tuition to sit for the Step 2 exams at their earliest opportunity. SMU does not do

that; instead, it continues to work with students in an effort to give them the best chance at success. *See* Decl., at ¶ 18. SMU has communicated to Plaintiff on several occasions that it would allow her additional time to achieve a satisfactory score on the CCSE and provided input on Plaintiff's proposed study plan. *Id.*, at ¶ 19. Plaintiff, however, has not attempted the CCSE again since last taking it in July 2022. *Id.*

Plaintiff contends that at the time she scored a 223 on the CCSE on December 18, 2021, SMU's published minimum score was 222 and therefore SMU was obligated to allow her to proceed to the Step 2 CK. That statement is false in two respects.

First, the Handbook does not contain a minimum score for the CCSE. Instead, the Handbook states that SMU determines in its discretion whether the student is ready to take the Step 2 CK exam or needs additional remediation. ECF No. 2-8 at 233.

Second, SMU previously explained that the CCSE test result is only one factor in determining a student's readiness to sit for Step 2 CK:

> After successfully passing the NBME CCSE and NBME CCSA, a portfolio containing Basic Science exam scores and GPA, Step 1 score(s) and Clinical Science exam scores will be forwarded to the school's certification committee *for consideration* of the Step 2 CK certification.

*See* ECF No. 2-14 at 1 (emphasis added). Thus, achievement of a 222 on the CCSE (along with all other prerequisites described in the June 8 email), merely meant that a student's records would be forwarded to SMU's certification committee for

4

*consideration* of readiness to take Step 2 CK; it did not result in automatic approval to take the Step 2 CK as Plaintiff suggests.

Plaintiff claims that she surpassed the NBME's own published passing score of 209 for the CCSE, but this is also incorrect. The NBME CCSE Score Interpretation Guide and NBME CCSE Reports attached as Exhibits C-D to Plaintiff's Complaint (ECF Nos. 2-5 and 2-6) *do not* identify any CCSE passing score promulgated by the NBME. Instead, reference is made *only* to the USMLE Step 2 CK passing score of 209. ECF No. 2-6 at 1. As NBME informs medical students, the "CCSE score represents an *estimate* of your performance on Step 2 CK if you had taken both exams under the same conditions and with the same level of knowledge," (*id.*) (emphasis added); the CCSE is "designed to be broadly appropriate as *part* of an *overall examinee assessment*" and "should not be used alone, but rather *in conjunction with other indicators of examinee performance in determination of grades.*" (ECF No. 2-5 at 1) (emphasis added). Further, the standard error of estimate ("SEE") on the CCSE is 9 points, meaning that if an examinee tested repeatedly under the same conditions on a different set of items covering the same content, their CCSE score would fall within one SEE of the current score two-thirds of the time. *Id.*

In sum, there is no "passing" score on the CCSE. As NBME makes clear, the CCSE is intended to form only one part of an overall examinee assessment (precisely

5

as SMU utilizes the score), and scoring above a 209 on the CCSE is not a guarantee that the student will achieve a 209 on the Step 2 CK.

Moreover, SMU's requirement that students achieve a strong score on the CCSE is to protect the student's ability to obtain a residency, *i.e.*, to successfully Match following graduation from medical school. *See* Decl., at ¶ 8. Students who fail any USMLE exam, or who narrowly pass with only a low passing score, find it more difficult to obtain a residency. *See* Decl., at ¶ 9. Accordingly, SMU allows students to sit for an exam only when they have demonstrated that they have mastered the knowledge necessary to pass it successfully. *Id.* at ¶ 10. SMU carefully and continuously studies the scores that its students achieve on both the CCSE and the Step 2 CK, and periodically adjusts what it deems to be "satisfactory performance" on the CCSE based upon this analysis. *Id.*, at ¶ 12. For this reason, SMU's determination of "satisfactory performance" on the CCSE is higher than the 209 score necessary to pass the Step 2 CK. *Id.*

When Plaintiff took the CCSE on December 18, 2021, there was *no* CCSE minimum score in place at SMU; instead, a student's readiness to take the Step 2 CK was based on a range of factors of which CCSE performance was but one component. Decl., at ¶ 13. Students, like Plaintiff, who fail to show readiness are required to take additional steps, including achieving satisfactory performance on the CCSE prior to being permitted to take the USMLE Step 2 CK exam. *Id.* at ¶ 14.

Plaintiff relies heavily on Dean Salter's Medical Student Performance Evaluation ("MSPE"), but this evaluation does not address Plaintiff's CCSE

6

performance, nor is it a substitute for achieving a satisfactory score on the CCSE. *Id.*, at ¶ 16. Moreover, even the MSPE expressly states that Plaintiff "needs to improve her test-taking skills." ECF No. 2-4 at 3. This completely undercuts Plaintiff's near-exclusive reliance on the MSPE.

Finally, Plaintiff's own inaction demonstrates why preliminary injunctive relief is inappropriate in this circumstance. Plaintiff first took the CCSE on July 15, 2021, and last took it on July 8, 2022. She then waited over five months to file her lawsuit on December 9, 2022. She then waited nine more months to move for preliminary injunction on August 10, 2023. Thus, Plaintiff has already missed the 2022 Match and the 2023 Match as a result of her own inaction. These facts alone undermine the emergent circumstances that she must demonstrate for a preliminary injunction.

## Argument

### I. Plaintiff is not likely to succeed on the merits.

In her Complaint, Plaintiff alleges claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of the Florida Deceptive and Unfair Trade Practices Act, fraud, and declaratory judgment. To support her claim for injunctive relief, Plaintiff focuses almost entirely on her claim for breach of contract, arguing that SMU published an alleged passing score of 222 and refused to certify Plaintiff for the Step 2 CK exam although she attained that score. ECF No. 31 at 7-10.

Plaintiff claims that SMU published a CCSE score requirement of 222 in August 2021. This contention is false for three reasons. First, the exhibit to which Plaintiff cites was sent in 2020, not 2021, *See* ECF No. 2-14 at 2. This is evident and

7

demonstrated by: (a) the fact that the email states the requirement becomes effective on 08/31/2020; and (b) the fact that the same email was attached to a separate complaint filed by another SMU student in 2020.[2] *See* Complaint, *Estrada v. St. Matthews Univ. School of Medicine*, No. 6:20-CV-01763-CEM-EJK, ECF No. 1-7 (M.D. Fla. Sept. 25, 2020). Second, and as discussed above, SMU constantly monitors its students CCSE scores and Step 2 CK scores and adjusts what constitutes "satisfactory performance" on the CCSE based upon its analysis. Decl., at ¶ 12. When Plaintiff took the CCSE on December 18, 2021, there was *no* CCSE minimum score in place, and instead, a student's readiness to take the Step 2 CK was based on a range of factors of which CCSE performance was but one component. Decl., at ¶ 13. Third, SMU previously informed students that achievement of a passing score on the CCSE merely results in the student's portfolio being forwarded to the school's certification committee for consideration of the Step 2 CK certification. *See* ECF No. 2-14 at 1.

Plaintiff next contends that SMU's MSPE demonstrates she is ready to proceed to the Step 2 CK notwithstanding her failure to achieve an adequate score on the CCSE ECF No. 31, ¶ 3. While Plaintiff's academic performance has been good enough to continue in the M.D. program at SMU, that is not the same thing as demonstrating sufficient mastery to both pass the Step 2 CK and participate in the Match. Decl., at ¶

---

[2] This student moved for a temporary injunction seeking similar relief as Plaintiff and on similar grounds. This court denied the motion. *See* Order, *Estrada v. St. Matthew's University School of Medicine,* No. 6:20-cv-1763-Orl-41EJK, ECF No. 28 (M.D. Fla. Nov. 4, 2020).

15. Indeed, even the MSPE states that Plaintiff needs to improve her test-taking skills. ECF No. 2-4 at 3.

## II. Plaintiff cannot show irreparable harm.

### A. Plaintiff's alleged harm is compensable by monetary damages.

To establish irreparable harm if preliminary injunctive relief is not granted, Plaintiff must show that she will suffer an injury for which she cannot be adequately compensated if she ultimately prevails on the merits. *United States v. Jefferson Cnty.,* 720 F.2d 1511, 1520 (11th Cir. 1983). For purposes of a preliminary injunction, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ferrero v. Associated Materials, Inc.,* 923 F.2d 1441, 1449 (11th Cir. 1991) (citation omitted). The asserted irreparable harm must be "neither remote nor speculative, but actual and imminent." *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000). Plaintiff has failed to meet her burden to show that, without injunctive relief, she likely will suffer immediate irreparable harm that is not adequately compensable by money damages.

Plaintiff argues that she will suffer irreparable harm in the form of: (1) additional time in medical school; (2) reputational damage inflicted upon Plaintiff and its negative impact on her future professional career; and (3) lost opportunities. *See* ECF 31 at 10-11. SMU addresses these contentions in turn.

The harm stemming from Plaintiff's inability to take the Step 2 CK in August and corresponding inability to participate in the 2024 Match would be a one-year delay in Plaintiff's residency placement. Such harm is adequately compensable by money damages. *See, e.g.*, *Sharick v. Se. Univ. of Health Scis., Inc.*, 780 So. 2d 136, 141 (Fla. 3d

9

DCA 2000) (allowing damages for loss of a medical degree); *see also Montague v. Yale Univ.*, No. 3:16-CV-00885(AVC), 2017 WL 4942772, at *4 (D. Conn. Mar. 8, 2017) (suffering a delay in education analogous to a suspension can be remedied through monetary compensation); *Knoch v. Univ. of Pittsburgh*, No. 2:16-CV-00970-CRE, 2016 WL 4570755, at *8 (W.D. Pa. Aug. 31, 2016) ("The Court finds that while Plaintiff will suffer injury by not timely graduating because of his suspension, this injury is not irreparable").

Moreover, Plaintiff's argument that the passage of time makes it more difficult to pass the Step 2 CK is undermined by Plaintiff's own conduct. SMU approved Plaintiff's study plan and provided her with additional time to take the CCSE but she has failed to retake the CCSE since July 2022. See Decl., at ¶ 19.

While "loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm," where the facts support such a finding, the party pursuing the injunction must provide more than mere speculation from which the Court may make such a finding." *Nivel Parts & Mfg. Co. v. Textron, Inc.*, No. 3:17-cv-146-J-32JRK, 2017 WL 1552034, at *2 (M.D. Fla. May 1, 2017). A "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the [injunction seeker]." *Id.* at *1-2. A moving party must provide independent proof of irreparable harm. *Id.* at *1 (citations omitted). Here, Plaintiff has provided no proof of reputational harm or lost opportunities. All she has offered are her own conclusory statements, which lack any evidentiary support whatsoever.

10

> **B. Plaintiff's delay in seeking a preliminary injunction demonstrates she is not at risk of suffering irreparable harm.**

A delay in seeking an injunction "militates against a finding of irreparable harm," and is "irreconcilable with the urgency that must underlie a preliminary injunction." *Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 470 (M.D. Fla. 2022); *See also Malicious Women Candle Co., LLC v. Cox*, 506 F. Supp. 3d 1245, 1247 (M.D. Fla. 2020) (Dalton, J.) (explaining that delay "weighs strongly" against irreparable harm).

Plaintiff's nine-month delay from the filing of this lawsuit in December 2022 to the filing of her motion for preliminary injunction is fatal to any showing of irreparable harm. The Eleventh Circuit's decision in *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016), is on all fours. In *Wreal,* the plaintiff sued Amazon.com, alleging that Amazon's new Kindle Fire tablets infringed its trademarks. *Id.* at 1246-47. Two weeks after the launch of Amazon's products, the plaintiff filed its complaint. *Id.* at 1247. For months thereafter, however, the plaintiff took no discovery and made just routine, case-management filings in the district court. *Id.* Then, more than five months after filing the complaint, the plaintiff moved for a preliminary injunction. The Eleventh Circuit found the district court properly denied the preliminary injunction "because, among reasons, the plaintiff pursued its preliminary-injunction motion with the urgency of someone out on a meandering evening stroll rather than someone in a race against time." *Id.* at 1246.

The Court held that "the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can

11

be resolved on its merits. *Id.* at 1248 (emphasis in original) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1539 (11th Cir. 1989)). Thus, "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm. *Id.* (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *Taylor v. Biglari*, 971 F. Supp. 2d 847, 853 (S.D. Ind. 2013); *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983)); *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439–40 (E.D.N.Y. 2013); *Hi–Tech Pharm., Inc. v. Herbal Health Prods., Inc.*, 311 F. Supp. 2d 1353, 1357–58 (N.D. Ga. 2004); *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355–56 (S.D. Fla. 2002)).

The Eleventh Circuit concluded that the plaintiff failed to offer any explanation for its five-month delay, and the preliminary-injunction motion relied exclusively on evidence that was available to the plaintiff at the time it filed its complaint in April 2014. *Id.* at 1248-49. Therefore, "the district court did not abuse its discretion when it concluded that the plaintiff failed to demonstrate that an imminent injury would warrant the "extraordinary and drastic remedy' of a preliminary injunction." *Id.* (citing *Siegel*, 234 F.3d at 1176; *Yakus v. United States*, 321 U.S. 414, 440 (1944) ("The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff.")).

The facts of this case are directly in line with *Wreal*, except that Plaintiff has delayed her preliminary-injunction motion *much longer* than the plaintiff in *Wreal*. First, while the plaintiff in *Wreal* filed its complaint just two weeks after the alleged infringement, Plaintiff in this case waited five months after her last CCSE attempt to file suit. Plaintiff then waited nine more months to file her motion, without any attempted justification for the delay. Moreover, Plaintiff's preliminary-injunction motion is based exclusively upon evidence available to her at the time she filed her complaint, such as her CCSE test scores, the Handbook, the MSPE, pre-suit communications, etc. Further, Plaintiff has propounded no discovery in this case and has taken no action other than routine, case-management filings and a response to SMU's motion to dismiss the complaint. Thus, the binding Eleventh Circuit and Supreme Court precedent mandates denial of the preliminary-injunction motion as untimely.

### III. The harm to SMU if the Court grants the preliminary injunction would outweigh the harm to Plaintiff from a denial.

Plaintiff claims that SMU would not be harmed if the injunction were granted but this is plainly wrong. Allowing a student to avoid completion of SMU's Step 2 CK prerequisites, simply because she completed earlier coursework, would substantially undermine SMU's ability to ensure that its students are adequately prepared for the practice of medicine.

Plaintiff contends she met the required CCSE score but the CCSE score alone does not determine a student's readiness to take the Step 2 CK. *See* Decl., at ¶ 13; *see*

13

*also* ECF No. 2-14, p. 1 (achievement of CCSE minimum score along with other prerequisites merely makes a student eligible for *consideration* of the Step 2 CK certification). SMU properly can take into consideration the number of times Plaintiff has taken the practice exam; the overall trajectory of her scores, including the fact that her last two scores were lower than her December 2021 score of 223; and the fact that CCSE scores predict at best a general range of performance on the Step 2 CK exam, which even then a student on average will achieve only two-thirds of the time, to reach a different conclusion as to her readiness.

If a particular CCSE score necessarily would result in certification, no discretion would be involved, in contradiction to the Handbook. It is axiomatic that contract language must be construed in a common-sense manner that gives meaning to the actual contract language. *Hatadis v. Achieva Credit Union*, 159 So. 3d 256, 259 (Fla. 2d DCA 2015) ("The goal in construing contract language is to reach a reasonable interpretation of the entire agreement in order to accomplish its stated purpose and meaning."). A preliminary injunction under these circumstances would deprive SMU of the discretion to which it is entitled under the express terms of the Handbook and prevailing case law.

The consequence of allowing students to bypass curriculum requirements robs SMU of its academic discretion and could diminish the quality of the physicians that it graduates. In the academic context, "judicial intervention in any form should be undertaken only with the greatest reluctance." *Doherty v. S. Coll. of Optometry*, 862, F.2d 570, 576 (6th Cir. 1988) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226

(1985)) ("This is the case especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession.").

**IV.     A preliminary injunction would not serve the public interest.**

SMU agrees with Plaintiff's contention that "[e]nforcing a legitimate contract between two parties is typically in the public's interest." *Larweth v. Magellan Health, Inc.*, 398 F. Supp. 3d 1281, 1292 (M.D. Fla. 2019). However, "[w]hen a contract is clear and unambiguous, the court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." *Snyder v. Florida Prepaid College Board*, 269 So. 3d 586, 592 (Fla. 1st DCA 2019). The Handbook expressly granted SMU the discretion to determine its students' readiness to take the Step 2 CK. Furthermore, SMU did not promise, in its Handbook or elsewhere, that a student who achieved a presumptively passing score on the CCSE would be automatically allowed to sit for the Step 2 CK exam. To the contrary, SMU stated that it would make the determination whether a student would be certified in its discretion. ECF No. 2, ¶ 66; ECF No. 2-8 at 233-34. Plaintiff provides no reason in public policy why the Court should modify a private university's contractual relationship with only one student.

Plaintiff proffers that public interest is served by requiring that medical students be allowed the opportunity to take Step 2 CK, participate in the Match, receive post-graduate medical training, and enter a depleted physician workforce. However, public policy favors the education and training of competent physicians. Courts in Florida

and elsewhere repeatedly have held that academic requirements such as those at issue in this case are rationally related to a medical school's "legitimate function of educating physicians." *Hughes*, 765 So. 2d at 542 (upholding medical schools' right to change its requirements for passing USMLE Step I exam); see also *Ku v. State of Tennessee*, 322 F.3d 431, 438 (6th Cir. 2003) (upholding requirement that medical student follow a particularized program of remediation before being allowed to reenter the program); *Catalan-Aguilar v. R3 Educ., Inc.*, No. CV 14-12607-GAO, 2015 WL 6043598, at *1 (D. Mass. Oct. 15, 2015) (upholding policy requiring approval of medical school administrators to sit for Step 2 CK exam upon satisfactory performance on NBME practice exams); *Jallali*, 992 So. 2d at 344 (university "was authorized to change its degree requirements . . . to require students to pass the Comlex Level II exam within six years of matriculation""); *Mahavongsanan*, 529 F.2d at 450 ("university's decision to require the comprehensive examination was a reasonable academic regulation within the expertise of the university's faculty").

V. **Plaintiff's motion improperly seeks ultimate relief via preliminary injunction.**

Plaintiff's preliminary-injunction motion is improper for the additional reason that it does not seek to maintain the *status quo* (in which she has not achieved a satisfactory score on the CCSE and has not been certified by SMU to take the Step 2 CK), but instead seeks, by way of preliminary injunction, the ultimate case-dispositive determination that SMU's CCSE requirements do not apply and she should be permitted to proceed directly to the Step 2 CK. The purpose of a preliminary injunction

16

is to maintain the *status quo* until the court can enter a final decision on the merits of the case. *Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-1724-T-33TBM, 2016 WL 11469181, at *2 (M.D. Fla. May 18, 2016), report and recommendation adopted at 2016 WL 3345268 (M.D. Fla. June 15, 2016) (citing *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011)). This type of mandatory preliminary injunctive relief is particularly disfavored and the moving party bears an even heavier burden. *Id.*

The court's decision in *Pinkston* is highly instructive. In *Pinkston*, the plaintiff alleged she was wrongfully denied her diploma after the university conferred her bachelor's degree at the commencement ceremony. *Pinkson*, 2016 WL 11469181, at *1. She sought, among other things, an order directing delivery of her diploma and reinstatement of a B- in a basic biochemistry course. *Id.* The court denied her motion for preliminary injunction because "in actuality Plaintiff's motion does not seek to maintain the *status quo* (in which she has no diploma), but instead seeks, by way of a preliminary injunction, the ultimate case-dispositive determination that she should receive her diploma." *Id.* at *2. In reaching its decision, the court observed:

> Finally, case law supports that the decision to confer a degree is an academic one, not to be judicially overridden except in rare circumstances. In *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985), on admittedly different facts, the Supreme Court recognized that "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 225; *see also Haberle v. Univ. of Alabama in Birmingham*, 803 F.2d 1536, 1539-40 (11th Cir. 1986). While Plaintiff may ultimately prove that the denial of her degree was racially or gender

17

> motivated, such is not apparent from this motion and the entry of a preliminary injunction awarding her a degree prematurely would unduly harm the academic standards and processes of USF. Moreover, such a ruling would, in the circumstances, disserve the public interest.

*Id.* at *4.

The Court's analysis in *Pinkston* applies with equal force here. The Court should decline Plaintiff's inappropriate invitation to enter a preliminary injunction awarding her the ultimate relief of bypassing SMU's well-founded CCSE requirements, which would harm the academic standards and processes of SMU and disserve the public interest.

## VI. Plaintiff's motion does not comply with the Local Rules.

The Court also should deny Plaintiff's preliminary-injunction motion because it violates the Local Rules in numerous, meaningful ways. Local Rule 6.02, titled "Preliminary Injunction," states that a motion for preliminary injunction must comply with the requirements of Local Rule 6.01(a) and (b). Plaintiff, however, didn't verify the motion or her complaint. Local Rule 6.01(a)(2). Plaintiff also failed to provide "a precise and verified explanation of the amount and form of the required security." *See* Local Rule 6.01(a)(3). Plaintiff also did not provide a proposed order. Rule 6.01(a)(5). Finally, Plaintiff did not "include as an attachment each paper on which the movant relies." *See* Local Rule 6.02(a)(2).

Failure to comply with the Local Rules governing preliminary injunctions is grounds for denial of the motion. *Wicked Grips LLC v. Badaan*, No. 8:21-CV-2131-KKM-SPF, 2021 WL 4710488, at *3 (M.D. Fla. Oct. 8, 2021) (citing *Benson v.*

18

*Hernando Cry. Sch. Dist. Bd.*, No. 21-cv-2060-CEH-AAS, 2021 WL 4050952, at *1 (M.D. Fla. Aug. 27, 2021) (Honeywell, J.) (denying motion for preliminary injunction for failure to comply with Local Rule 6.02 requirement to provide "a precise and verified description of the conduct and the persons" plaintiff sought to enjoin or "a precise and verified explanation of the amount and form of the required security."). Thus, SMU requests dismissal of the preliminary-injunction motion for failure to comply with the Local Rules.

## Conclusion

Plaintiff's motion for preliminary injunction should be denied.

Dated: August 17, 2023

LOCKE LORD LLP

By  */s/ Dale A. Evans Jr.*
Dale A. Evans Jr.
Florida Bar No. 98496
LOCKE LORD LLP
777 South Flagler Drive
East Tower, Suite 215
West Palm Beach, FL 33401
Telephone: (561) 833-7700
Facsimile: (561) 655-8719
dale.evans@lockelord.com

*Counsel for Defendant St. Matthew's University School of Medicine*