UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DANIELLE MARIE GEGAS,**

          **Petitioner,**

v.                                                                    Case No: 6:22-cv-2299-PGB-EJK

**ST. MATTHEW'S UNIVERSITY SCHOOL OF MEDICINE,**

          **Defendant.**
_____/

## ORDER

This cause comes before the Court on St. Matthew's University School of Medicine's Motion to Dismiss (Doc. 22 (the "**Motion**")) and Plaintiff Danielle Gegas's response thereto (Doc. 23 (the "**Response**")). Upon consideration, the Motion is due to be granted in part and denied in part.

**I.   BACKGROUND**[1]

This case stems from an allegation that St. Matthew's University School of Medicine ("**Defendant**" or the "**University**") wrongfully precluded Danielle Gegas ("**Plaintiff**") from taking a requisite medical school exam notwithstanding her qualifications and readiness to do so. (Doc. 2, (the "**Complaint**") ¶ 1).

---

[1]   This account of the facts comes from the Plaintiff's Complaint. (Doc. 2). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Plaintiff is a currently registered medical student with Defendant, a Florida-registered foreign for-profit corporation.[2] (*Id.* ¶ 3). Plaintiff initially enrolled as a medical student at the American University of the Caribbean, St. Maarten on May 1, 2016. (*Id.* ¶ 8). She later transferred to Defendant, matriculating on January 8, 2018 with an anticipated graduation date of December 25, 2021. (*Id.* ¶ 10). Like most medical students, Plaintiff was preparing to enter a Residency program upon graduation from medical school in order to complete her post-graduate medical training. (*Id.* ¶¶ 11, 28). Medical students secure Residency opportunities through the National Residency Internship Match (the "**Match Program**") in their fourth year of medical school. (*Id.* ¶ 29).

At some point throughout her clinical rotations, it became apparent that Plaintiff was actually on track to graduate as early as May 2021, which would enable her to enter, along with her spouse, into the Couples' Match Program—an opportunity for married couples to enter the program jointly, so that they can pursue Residency internships in the same geographic location. (*Id.* ¶¶ 11, 30). Plaintiff subsequently relied on this anticipated graduation date in terms of

---

[2] Defendant has waived any arguments predicated on personal jurisdiction because it has not raised any such arguments in its Motion. (Doc. 22); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) ("Finally, unlike subject-matter jurisdiction, which even an appellate court may review *sua sponte*, under Rule 12(h), Federal Rules of Civil Procedure, '[a] defense of lack of jurisdiction over the person … is waived' if not timely raised in the answer or a responsive pleading.").

2

planning her wedding date with the expectation that she would be able to participate in the Couples' Match Program. (*Id.* ¶ 12).

To be eligible for the Match Program, medical students must complete certain requirements in accordance with national and school-specific standards, including the Step I and Step II portions of the United States Medical Licensing Examination ("**USMLE**"). (*Id.* ¶ 95). The University disclosed in its Clinical Medicine Handbook its requirement that students pass a third-party's pre-test as a prerequisite to taking Step II of the USMLE. (*Id.* ¶ 16). Defendant did not, however, disclose this requirement on its website. (*Id.*). The crux of this dispute stems from Plaintiff's claim that the University unlawfully refused to certify her for eligibility to take Step II.[3] (*Id.* ¶ 17).

Plaintiff alleges that Defendant unlawfully applied arbitrary and capricious standards in refusing to allow her to take Step II. (*Id.* ¶ 125). For one, Plaintiff alleges that, despite its awareness of her Attention Deficit Hyperactivity Disorder, Defendant refused her request for exam accommodations. (*Id.* ¶ 19). However, after denying this request, Defendant demands that Plaintiff request these accommodations once again before taking her Step II exam. (*Id.*).

Second, Plaintiff suggests that Defendant intentionally aimed to keep students longer than they needed to be in medical school for business purposes,

---

3   Plaintiff claims that Defendant has also delayed or prevented other students similarly situated to Plaintiff from graduating on time by refusing to certify them for Step II eligibility as well. (*Id.* ¶ 17). While those similarly situated students have not requested relief before this Court, the Court makes note of Plaintiff's claims here to reflect the systemic nature of her allegations against Defendant.

3

claiming that two Clinical Deans visited the Cayman Islands during the last part of her second year to discuss delays during the last two years of medical school and the likelihood that graduation would be delayed and cost more. (*Id.* ¶ 45). Defendant allegedly told Plaintiff that she should slow down and not anticipate graduating in four years. (*Id.* ¶ 46). Defendant encouraged Plaintiff to give up a clinical rotation that she had already secured in New York in favor of another student. (*Id.* ¶ 47). When Plaintiff chose to remain in the rotation because she had already relocated to New York and found housing, Defendant allegedly punished her by subjecting her to longer intervals between her rotations and by changing her schedule, interfering with her wedding plans. (*Id.*). When Plaintiff protested, Defendant told her, "Maybe if your priorities were on your medical education, you wouldn't be having these problems (trying to remain on target to graduate in four years)." (*Id.* ¶ 48). Defendant stated that the reason she had not been afforded her preferred clinical rotation was because it was only provided to students completing their third year even though Plaintiff was in fact completing her third year at that time. (*Id.* ¶ 49).

Plaintiff claims that, despite these issues, Plaintiff was still able to excel in her clinical rotations and electives in order to remain on schedule for a May 2021 graduation date. (*Id.* ¶ 56). However, matters became more complicated for Plaintiff given the issues Defendant created with regard to the Comprehensive Clinical Science Examination ("**CCSE**"). (*Id.*). The CCSE is a pre-test that provides a benchmark for readiness to take Step II; however, neither the National Board of

4

Medical Examiners ("**NMBE**") nor medical schools or the USMLE require that this test be taken or passed before taking Step II—the CCSE does not impact licensure in any state. (*Id.* ¶¶ 57, 59). Defendant, however, not only requires CCSE passage but goes a step further and mandates its own passing score that exceeds what is considered the passing score nationally. (*Id.* ¶¶ 61, 62). Specifically, the NMBE pass rate cut-off for the CCSE is 209; Defendant, without explanation, made its passing score for its students 220 and then later changed this score to 222. (*Id.* ¶ 62).

Plaintiff's issue with respect to the CCSE began when, although not totally prepared but in an effort to be eligible for the Couples Match, she asked Defendant to take the CCSE early to gauge her progress given her past difficulties with exam-taking. (*Id.* ¶ 72). In doing so, she contacted one of Defendant's professors because she was concerned about any potential repercussions were she to fail the exam. (*Id.*). Plaintiff relied on this professor's statement that there would be no penalties for failing except that Plaintiff would have to pay to take the exam again. (*Id.*). Plaintiff took the exam for the first time on July 15, 2021 and scored a 208—one point shy of the national passing score and several points shy of Defendant's cut-off. (*Id.* ¶ 73).

Subsequently, Plaintiff completed a review course and scored 211 on September 2, 2021 after Defendant had changed its passing score from 220 to 222 and accordingly refused to certify her for Step II eligibility. (*Id.* ¶ 75). On October 22, 2021, Plaintiff scored a 210. (Doc. 23, p. 3). On her fourth attempt in December

5

2021, Plaintiff scored 223 at which time Defendant's passing score was still 222. (*Id.*). However, although Defendant initially approved her for eligibility, Defendant changed its mind and ultimately Defendant still refused to certify her at this time. (Doc. 2, ¶ 78). Plaintiff thereafter scored 214 and 220, respectively, on her next two attempts. (Doc. 23, p. 3). Of note, at one point Plaintiff was told that, to move forward, she would have to score on the CCSE as high as 260, a score that is approximately in the 98th percentile of the exam.[4] (Doc. 2, ¶ 76). Plaintiff was not afforded a remediation plan at this time. (*Id.*).

To bolster her claim, Plaintiff cites other positive metrics of performance reflected throughout her time as a student at the University. (*Id.* ¶ 91). For instance, the Dean of Clinical Sciences confirmed that Plaintiff's transcript reflected her completion of her clinical clerkships and electives with all "Honors" and "High Pass" grades and that her cumulative grade point average met or exceeded those of her colleagues in most cases. (*Id.* ¶ 91; Doc. 2-3, p. 1). Plaintiff also has also provided her Medical Student Performance Evaluation, in which she received glowing reviews and positive performance ratings, including statements reflecting her "steadfast and focused commitment to the study of medicine" and her "maturity and dependability during her clinical rotations." (Doc. 2-4, p. 1). She

---

4   The Court states this fact based on the data provided publicly by the National Board of Medical Examiners. *See National Medical Board Examiners, Subject Examination Program Comprehensive Clinical Science Examination Score Interpretation Guide*, 2 (September 2020), https://www.nbme.org/sites/default/files/2021-02/Comprehensive_Clinical_Score_Interpretation_Guide_2021.pdf (last visited August 17, 2023).

6

additionally demonstrated "poised leadership" and excellent performance in that she "was the medical student most often relied upon for emergency operations during her Surgical rotation." (*Id.*). Furthermore, Plaintiff alleges that she was surely competitive for the Match program given the fact that she received two interviews and was waitlisted for a third interview immediately after she applied to ten Family Medicine Residency programs without Step II results. (*Id.* ¶ 50). Residency interviews are necessary for acceptance and are only afforded to competitive candidates; it is atypical to receive an interview without having completed Step II. (*Id.*). Plaintiff asserts that these facts, among others listed in the Complaint, speak to Defendant's unlawfully arbitrary and capricious application of its standards. (*Id.* ¶ 109). Plaintiff's graduation date has been delayed until, at the earliest, 2024, and she has missed the opportunity to participate in the Couples Match program with her partner as a result of Defendant's refusal to certify her. (*Id.* ¶ 38). Plaintiff has also incurred additional costs that she may not have otherwise had she matriculated at a different medical school. (*Id.* ¶¶ 38, 102).

Plaintiff filed her Complaint thereafter, seeking relief based on several causes of action. (*Id.* ¶¶ 103–37). Count I is a claim for breach of contract. (*Id.* ¶ 103). Count II is a claim for breach of an implied covenant of good faith and fair dealing. (*Id.* ¶ 107). Count III is a claim for a violation of the Florida Deceptive and Unfair Trade Practices Act ("**FDUPTA**"). (*Id.* ¶ 112). Count IV is a claim for fraud.

7

(*Id.* ¶ 118). Count V is a claim for declaratory judgment. (*Id.* ¶ 124). Count VI is a claim for injunctive relief. (*Id.* ¶ 132).

Defendant filed the instant Motion to Dismiss (Doc. 22), and Plaintiff responded in opposition. (Doc. 23). As such, this matter is now ripe for review.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations

as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

The Court finds that Defendant's Motion is due to be granted in part and denied in part.

### A.   Count I: Breach of Contract

Plaintiff alleges that Defendant breached its contract both expressly and in terms of the implied covenant of good faith owed to her. (Doc. 2, ¶¶ 103–11). Upon consideration, the Court finds that Plaintiff's claims are due to survive at this juncture.

"To state a breach of contract claim in Florida, a plaintiff must plead 1) that a contract exists, 2) a material breach of that contract occurred, and 3) resulting damages." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). "In Florida, a student's relationship with his or her private university is contractual in nature." *Dixon v. Univ. of Mia.*, No. 23-10299, 2023 WL 4853327, at *2 (11th Cir. July 31, 2023)[5] (citing *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). "The terms of this may be derived from university publications such as the student handbook and catalog." *Id.* (quoting *Fla Int'l Bd. of Trs. v. Alexandre*, No. 3D22-0072, 2023 WL 3485498, at *3 (Fla. 3d DCA May 17, 2023)

---

[5] Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

9

(internal quotation marks omitted)). But "a party can only advance a claim of breach of contract by identifying and presenting the actual terms of the contract allegedly breached." *In re Univ. of Mia. COVID-19 Tuition & Fee Refund Litig.*, No. 20-22207, 2022 WL 18034457, at *3 (S.D. Fla. Dec. 30, 2022) (quoting *Herssein Law Grp. v. Reed Elsevier*, 594 F. App'x 606, 608 (11th Cir. 2015)).

"A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (per curiam) (citing *Jallali*, 992 So. 2d at 343). A decision can be considered legally "arbitrary" if it is "founded on prejudice or preference rather than on reason or fact", "nonrational," "not done according to reason or judgment," or "without fair, solid and substantial cause." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1258 (S.D. Fla. 2006). When a university changes its grading requirements or applies them without specific justification, such a decision may implicate contractual ambiguity that requires discovery for resolution. *Roberson v. Health Career Inst. LLC*, No. 22-CV-81883-RAR, 2023 WL 4991121, at *8 (S.D. Fla. Aug. 3, 2023) ("And interpreting potential ambiguity in a contract 'is typically inappropriate at the motion to dismiss stage.'" (citation omitted)).

Defendant argues that it did not breach its contract with Plaintiff because, like all other universities, it is entitled to change its graduation requirements as it sees fit. (Doc. 22, p. 9). Moreover, Defendant claims that it did not administer its

10

changing requirements in an arbitrary or capricious manner because "[t]he CCSE score report itself makes clear that a 'passing' score can be used in conjunction with other information to assess a student's readiness to take the Step [II]" exam. (Doc. 22, p. 11). Plaintiff, however, argues that Defendant arbitrarily applied its standards to her because it refused to certify her despite her overall performance in multiple respects, which included passing the CCSE based on the score Defendant set. (Doc. 23, p. 11).

Taking all of Plaintiff's allegations in the aggregate, the Court finds that Plaintiff has plausibly alleged a breach of contract here. Decided as recently as this month, the Court looks to the *Roberson* court as instructive. 2023 WL 4991121, at *8. There, the Court noted that the parties' dispute over Defendant's decision to change its grading requirements necessarily entailed discovery, precluding dismissal at the motion to dismiss stage in the litigation. *Id.* The Court finds that this course of action is appropriate here for several reasons. First, Defendant contends that it used Plaintiff's CCSE score rates "in conjunction with other information to assess a student's readiness to take the Step [II]." (Doc. 22, p. 11).

However, Defendant's argument does not necessarily account for Plaintiff's claim that the other information available on her performance was exceptionally positive. (Doc. 2, ¶ 91; Doc-23, p. 1; Doc. 2-4, p. 1). Plainly, the Court is troubled by the fact that Defendant forced Plaintiff to retake the exam after she scored a 223 on the CCSE, a score that met even the standard exceeding the national standard set by Defendant. (Doc. 23, p. 3). Furthermore, discovery is warranted to show that

11

Defendant did not act arbitrarily in changing its mind about certifying her after she passed the CCSEE and then telling Plaintiff she had to score as high as 260 on the exam at a point. (Doc. 2, ¶¶ 76, 78). A reason for Defendant's decision may very well exist. If it does, Plaintiff has shown that she is entitled to additional discovery explaining the reason, whether such a standard was applied systematically and uniformly to other students, and what records the University can show supporting such a rationale. At the very least, Plaintiff's claim is plausible and will not be dismissed before the exchange of discovery.

### B.    Count II: Breach of Implied Covenant of Good Faith

The Court finds that Plaintiff's breach of good faith claim survives here as well.

"The 'implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations." *Mangravite v. Univ. of Miami*, 838 F. Supp. 2d 1326, 1332 (S.D. Fla. 2011) (citation omitted). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id.* (citation omitted). "Where, as here, a contract gives a party substantial discretion to promote that party's self-interest, the implied covenant of good faith serves as a 'gap-filling default rule.'" *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1308 (S.D. Fla. 2014). To that end, it is important to consider the Supreme Court's determination that "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their

12

entitlement to promotion or graduation." *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225 (1985).

Defendant argues that Plaintiff cannot bring a claim of breaching the implied covenant of good faith without a showing that an express term of the contract was breached. (Doc. 22, p. 14). This argument fails for two reasons. For one, Plaintiff has alleged that Defendant refused to allow Plaintiff to advance toward graduation despite her meeting ECFMG guidelines. (Doc. 2, ¶ 111). If this decision should be considered as stretching outside the parties' express terms in their contract, the Court requires discovery showing as much. Either way, dismissal is premature without more specific review of the contract's terms.

Second, the Court finds that here Defendant has had and continues to enjoy "substantial discretion to promote [its] self-interest," exemplifying precisely why courts allow parties to rely on good faith claims when one party has tremendous opportunity to frustrate a contract. *Hamilton*, 6 F. Supp. 3d at 1308. In the same way that courts must provide deference to universities in large part, they must also investigate claims of particularly suspect conduct that on its face appears plausibly unlawful. In this case, Plaintiff's breach of good faith claim serves as the appropriate medium to do just that. If Defendant intends to argue that no express term of the contract was breached—and therefore a breach of good faith claim cannot survive—upon the exchange of discovery, it may do so and re-raise its argument on good faith at that time. Unless and until that happens, without more, Plaintiff's claim survives.

### C. Count III: Claim Under the Fraudulent, Deceptive, and Unfair Trade Practices Act

Plaintiff also successfully pleads her FDUPTA claim.

"[A] consumer claim for damages under [the] FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (citations omitted). Florida law permits a FDUPTA claim to accompany a related breach of contract claim if the FDUPTA claim challenges the acts underlying or precipitating the breach and does not "rely solely on a violation of the [contract] as a basis for assertion of a[n] FDUPTA claim." *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (citing *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008)). Allegations of arbitrary and capricious changes to grading and advancement can constitute valid FDUPTA claims under Florida law. *Roberson*, 2023 WL 4991121, at *12. A plaintiff need not plead an FDUPTA claim under the heightened pleading standard. *See Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) ("This Court joins several decisions in holding that the requirements of Rule 9(b) categorically do not apply to claims under FDUTPA.").

The Court need not engage in superfluous analysis here. Like the *Roberson* court, this Court finds that Plaintiff plausibly alleges an FDUPTA claim. 2023 WL 4991121, at *12. Plaintiff asserts that Defendant engaged, as discussed above, in arbitrary and capricious changes to Plaintiff's advancement with respect to the

CCSE. (Doc. 2, ¶ 45). She also asserts that "that two [of Defendant's] Clinical Deans visited the Cayman Islands during the last part of her second year to discuss delays during the last two years of medical school and the likelihood that graduation would be delayed and cost more." (*Id.*). Plaintiff further alleges that Defendant intended to force students to remain in the program longer for the sake of profit. (*Id.*).

Taken as true, these allegations collectively, in the Court's view, surely constitute a "deceptive act" that caused Plaintiff's "actual damages"—namely that her graduation and career prospects were delayed and subverted and also that she was forced to incur additional expenses. *Rollins, Inc.*, 951 So. 2d at 859; (Doc. 2, ¶ 102). Accordingly, Plaintiff's claim survives here as well.

### D.     Count IV: Fraud

Plaintiff's claim for fraud is due to be dismissed without prejudice.

Defendant correctly asserts that Plaintiff's claim for fraud must be pled with particularly in accordance with the heightened pleading standard. A complaint only meets the heightened pleading standard if the following are properly alleged: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence

15

of the fraud." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Upon review of the Complaint, the Court does not find that Plaintiff has alleged her claim of fraud with sufficient particularity to withstand Defendant's Motion. For example, Plaintiff fails to include specific details such as the time and place of where Defendant's statements were rendered. (*See* Doc. 2). Accordingly, the Court will allow the opportunity for repleader to comport with the heightened pleading requirements set forth above.

### E.   Count V: Declaratory Judgment

Plaintiff's request for declaratory judgment is due to survive Defendant's Motion.

District courts have discretion to afford declaratory judgment; this discretion is not obligatory. *See Lorini v. Progressive N. Ins. Co.*, No. CIV. A. 08-1363, 2008 WL 5216649, at *1 (W.D. Pa. Dec. 12, 2008); *see also State Auto Ins. Companies v. Summy,* 234 F.3d 131, 133 (3d Cir. 2000). Further, requests for declaratory judgment that are duplicative should not survive a motion to dismiss; a plaintiff has the burden of showing how the declaratory relief sought would be distinct from what would be gained by findings of liability on the other substantive claims at bar. *See Hannon v. Delaware Am. Life Ins. Co.*, No. 614CV301ORL40KRS, 2014 WL 12618716, at *3 (M.D. Fla. Oct. 2, 2014) ("Where victory on a declaratory judgment claim would not provide "relief above and

16

beyond" the relief afforded by victory on the breach of contract claim, the declaratory judgment claim should be dismissed.").

Here, Plaintiff argues that "if [she] prevail[s], her request for Declaratory Judgment will permit a more complete remedy and relief that would be available if Plaintiff prevailed solely on her [claims]" because she requires a court's declaration that she was unlawfully frustrated to protect her candidacy for her medical career. (Doc. 23, p. 16); *Hannon*, 2014 WL 12618716, at *3. The Court agrees that this kind of remedy concerning the protection of Plaintiff's candidacy would not necessarily flow fully from a finding of liability on a breach of contract claim should Plaintiff prevail. Accordingly, the Court exercises its discretionary authority to keep Plaintiff's request for declaratory relief intact at this stage in the litigation. *Lorini*, 2008 WL 5216649, at *1.

### F. Count VI: Injunctive Relief

Because Plaintiff has subsequently filed a Motion for Preliminary Injunction following her Complaint and Defendant's Motion, the Court will address the merits of Plaintiff's requested relief in a separate Order. (Doc. 31). The Court will therefore refrain from dismissing Plaintiff's claim for injunctive relief for now.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 22) is **GRANTED IN PART AND DENIED IN PART.**

    a. Count IV is **DISMISSED WITHOUT PREJUDICE**;

    b. On or before September 1, 2023, Plaintiff may file an Amended Complaint consistent with the directives of this Order and Rule 11. Failure to timely file an amended complaint will result in dismissal of Count IV with prejudice.

    c. Defendant's Motion is otherwise **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 25, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

18