# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DANIELLE MARIE GEGAS,**

     **Petitioner,**

**v.**                  **Case No: 6:22-cv-2299-PGB-EJK**

**ST. MATTHEW'S UNIVERSITY**
**SCHOOL OF MEDICINE,**

     **Defendant.**

_____/

### PETITIONER'S AMENDED, VERIFIED, and OPPOSED
### MOTION FOR PRELIMINARY INJUNCTION AND
### INCORPORATED MEMORANDUM OF LAW

Through undersigned and pursuant to this Court's Order, Doc. 34,

Petitioner respectfully amends her Motion seeking Preliminary Injunctive Relief

requiring that Defendant provide Plaintiff with a certificate of good standing such

that Plaintiff may take Part II of the United States Medical Licensing Examination

(Part II) on August 25, 2023, or as soon as possible thereafter, and apply for the

2023-2024 United States Residency Match Program (Match) beginning September

15, 2023. Plaintiff states:

### Compliance with this Court's Order

Plaintiff resubmits this Amended Verified Motion to comply this Court's

Order, Doc. 34, and avers:

a. Pursuant to an earlier Order, Doc. 33, providing Plaintiff the chance to Amend her Complaint and comply with the heightened pleading requirements, Plaintiff today submitted an Amended, Verified Complaint for Damages, Declaratory Judgment, Request for Injunctive Relief, and Demand for Jury Trial with Exhibits A-M.

b. While the Amended Complaints contains some minor changes, Plaintiff does not believe that it materially altered any of its original allegations. Plaintiff's original complaint noted that Defendant advertises high Part I passage rates. Plaintiff has since noted that Defendant advertised high Part I and Part II passage rates and provided percentages including 92% for Part I and 94% for Part II.

c. Plaintiff's largest modification of the original Complaint are contained in Count IV Fraud to meet the heightened pleading requirments. Some of these additional allegations were already contained earlier in the Complaint and some were explained more fully in detail such as dates and names added that were already contained within the Exhibits.

d. The same exhibits filed and served with the Complaint are again filed and served with the Amended Complaint without change.

e. Accordingly, neither this Amended Verified Motion, nor the originally filed motion relied upon any new documents contained outside the originally filed Complaint. (Doc. 2.)

f. Plaintiff attempted to fully comply with Local Rules 6.01 and 6.02.

g. Plaintiff will file a separate Notice today that she is not submitting new documents but rather relying upon the allegations contained in the Complaint and its attached Exhibits.

h. A Proposed Order will also be submitted pursuant to Rule 6.01(a)(5).

### Introduction and Background

1. On December 9, 2022, Plaintiff filed this action alleging: breach of contract, breach of an implied covenant of good faith and fair dealing, Defendant's fraudulent, deceptive, and unfair trade practices, and fraud and respectfully sought this Court's intervention for equitable relief, economic damages, declarative judgement, and injunctive relief. *Doc. 2.*

2. Plaintiff alleged that Defendant's Dean of Clinical Sciences unequivocally stated that, "[Plaintiff's] transcript document[ed] that she was a truly outstanding [medical] student...who [was] focused and perform[ed] well in all circumstances...and who...demonstrated an understanding and proficiency in each of our school's core competencies." *Doc 2-4.*

3. Specifically, Defendant's own Dean personally taught the Plaintiff and determined that not only was the Plaintiff a, "highly capable student," *(Id.)*

but also that:

> **[Plaintiff] has proven to herself and to others that she is a highly capable student who is focused and performs well in all circumstances. She has demonstrated an understanding and proficiency in each of our school's core competencies. She has earned high praise in all of her clinical rotations and demonstrated overall excellence relative to her peers**...[Plaintiff]'s CV is outstanding for any medical student. [Plaintiff's] gene therapy research experience was impressive. [Defendant's Dean] love[s] how well-rounded she is...[Plaintiff] was in [Defendant Dean's transition to residency] online course during COVID...[Plaintiff] was always prepared, engaged in the discussions...[Defendant's Dean] enjoyed having [Plaintiff] in [his] class. **[Defendant's Dean] predicted that [Plaintiff] will carry these strengths into her residency training and contribute greatly to the program, her colleagues, her teachers, and her patients. [Plaintiff's] transcript documents that she is a truly outstanding student in every way..."**

> *Id. (emphasis added)*

4. Despite this written evaluation, and despite Plaintiff's having: (a) already successfully completed her basic-science coursework; (b) already passed Part I of the USMLE; (c) already successfully completed her clinical rotations; and (d) having already exceeded Defendant's published passing score on a USMLE Pre-Test ("CCSE" or "Pre-Test") required before a student may take Part II of the USMLE, Defendant inexplicably continued to collect tuition and fees while prohibiting Plaintiff from actually taking

the Part II while improperly claiming that Plaintiff's Pre-Test score did not meet Defendant's Pre-Test criteria. *Docs 2, 2-4, 2-6.*

5. Notably, unlike all other Untied States based medical schools, and unlike requirements published by either the USMLE, the National Board of Medical Examiners (NBME), or any State requiring the USMLE for medical licensure, Defendant requires that its students take and Pre-Test that is designed and administered by the USMLE and achieve a score exceeding Defendant's published score requirement.

6. While the USMLE provides that its Pre-Test may be used as one predictive criterion for whether a medical student will pass Part II and sets that score at 209, Defendant itself requires a Pre-Test score of 222; having provided notification of this requirement to its students by E-mail in August 2021. *Doc 2-14.*

7. The crux of this controversy rests upon whether Defendant should allow Plaintiff to take Part II when Plaintiff has already met all Defendant's published criteria for doing so; including having a Pre-Test score that exceeded Defendant's required score in December 2021. *Docs 2 and 2-6.*

8. Plaintiff admittedly failed the first Pre-Test with an initial score of 208 on July 15, 2021. But, after Plaintiff completed Defendant-approved remediation (for not passing the Pre-Test), Defendant inexplicably required that Plaintiff continue to retake the Pre-Test on several more

occasions – even after Plaintiff exceeded Defendant's Pre-Test score on

December 18, 2021:

| Date | USMLE Passing Score | Defendant Passing Score | Plaintiff Score |
|---|---|---|---|
| 07/15/2021 | 209 | 220 (06/08/2021) | 208 |
| 09/02/2021 | 209 | 222 (08/31/2021) | 211 |
| 10/22/2021 | 209 | 222 | 210 |
| 12/18/2021 | 209 | 222 | 223 |
| 05/16/2022 | 209 | 222 | 214 |
| 07/08/2022 | 209 | 222 | 220 |

*Id. at Doc. 2-6.*

9. Importantly, this controversy revolves around a Pre-Test. A Pre-Test that only services to potentially provide some predictive value regarding whether a medical student might or might not pass Part II. *Doc. 2.*

10. The Pre-Test at issue possesses no other intrinsic value, has no impact on successful completion of a post-graduate medical education (internship and/or residency), and has no impact on medical licensure or facility privileges, or ultimately third-party payors. *Id.*

11. Because the Pre-Test's only value is predictive, and because Defendant sets a higher standard that the testing company requires, it is reasonable to conclude that Defendant's excess score requirement should result in a higher percentage of Defendant's students Passing Part II than anticipated by the testing company's predictive lower test score. But there exist no ascertainable data to support this supposition.

12. However, given that the testing company itself sets a Pre-Test pass score of 209, it is equally reasonable that any score above 209 predicts Part II passage.

13. Notably, Defendant required that Plaintiff take the Pre-Test six times, see above (*Doc. 2-6*). And Plaintiff exceeded a score of 209 on five occasions. Too Plaintiff exceeded Defendant's published required score of 222 in December 2021!

14. While Plaintiff may not be the most gifted test taker, because the Pre-Test only provides predictive value for passing Part II, there is absolutely no risk of harm to patients, other medical students, educational institutions, or any other person or entity when one medical student might have to retake Part II. The only risk of harm might arguable be to the test-taker herself who must re-take the examination.

15. Defendant's abject and inexplicable refusal to allow that Plaintiff, who Defendant described as an outstanding medical student, to take Part II given that Plaintiff also exceeded Defendant's Pre-Test score remains incomprehensible.

16. Defendant filed an Opposed Motion to Dismiss on March 24, 2023 (*Doc. 22*), to which Plaintiff responded (*Doc. 23*) on April 14, 2023, for which Defendant filed a response (*Doc. 30*) on May 16, 2023.

17. Because Plaintiff must take and pass Part II before entering the Match or completing her graduation requirements, because Defendant no longer lists Plaintiff as a full-time student requiring that Plaintiff now begin repaying her student loans, because Plaintiff long ago met Defendant's criteria for taking the USMLE Part II, and because the Match only opens once each year in September, Plaintiff respectfully seeks this Courts equitable intervention via Preliminary Injunction. *Doc. 2.* and see the Amended, Verified Complaint filed today.

## Memorandum of Law

Plaintiff recognizes that the relief sought by this Motion constitutes, "an extraordinary and drastic remedy" that may be granted at the Court's discretion. *See Antoine on behalf of I.A. v. Sch. Bd. of Collier Cnty.,* 301 F. Supp. 3d 1195, 1202 (M.D. Fla. 2018) *(quoting Siegel v. LePore,* 234 F. 3d 1163, 1176 (11th Cir. 2000)*(referencing) Powers v. Sec'y, Florida Dep't of Corr.,* 691 Fed. Appx. 581, 583 (11th Cir. 2017)*(not reported).* In filing this Motion, Plaintiff intends to demonstrate that: (1) she possesses a substantial likelihood of success on the merits; (2) unless granted she has sustained and will continue to sustain irreparable harm; (3) the harm to the Plaintiff/Movant substantially outweighs any potential harm to the Defendant; and (4) granting this Motion would be in the public interest. *Antoine (citing) Hamm v. Comm'r, Ala. Dep't. of Corr.,* 725 Fed. Appx 836, 840 (11th Cir. 2018). Plaintiff also recognizes that she bears a

heightened burden in requesting this Preliminary Injunction because Plaintiff is requesting that this Court require that Defendant affirmatively allow Plaintiff to take Part II. *See Antoine (citing) Powers at* 583-4.

**Plaintiff Possesses a Substantial Likelihood of Success on the Merits**

"A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success. *Navarro* v. *Florida Inst. Of Tech. Inc.*, 6:22-CV-1950-CEM-EJK 2023 WL 2078264, at *4 (M.D. Fla. Feb. 17, 2023) (*quoting) Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005), *aff'd*, 403 F.3d 1223, 1229 (11th Cir. 2005). Plaintiff alleged and provided exhibits demonstrating Defendant's published conditions precedent before its students could take Part II. *Doc. 2 and exhibits Docs. 2-1 – 2-15.*

In addition to its other requirements, Defendant requires a Pre-Test score exceeding 222 to be eligible to take Part II. *Docs 2-6 and 2-14.* Plaintiff exceeded Defendant's Pre-Test published score requirement of 222 by scoring 223 on December 18, 2021. It is also evident from plain language of Defendant Dean's written evaluation of the Plaintiff, and the Plaintiff's transcript, that the Plaintiff already met all other requirements for taking Part II. *Docs. 2-1 and 2-4.* When considering Defendant's persistent refusal to allow that the Plaintiff take Part II, given an equally plain reading of Defendant's own Part II requirements,

Plaintiff's transcript (*Doc 2-1*), and Defendant's own evaluation of Plaintiff (*Doc 2-4*), Plaintiff should possess a sufficiently likely showing to support a reasonable chance of success on the merits of her claim.

Simply put, Defendant's publications indicate that if an enrolled student satisfactorily completes her clinical rotations and scores in excess of 222 on the Pre-Test, that student may take Part II. It has not been argued that Plaintiff did not satisfactorily complete her clinical rotations. To the contrary, Defendant stated, in writing, that Plaintiff "was an outstanding medical student." *Doc. 2-4.* And Plaintiff exceeded the required Pre-Test score of 222 (published by Defendant in August 2021 *Doc. 2.14*) on December 18, 2021. *Doc. 2-6.*

Defendant's failure to adhere to Defendant's own published guidelines absolutely breaches the bargain it entered into with its students where students pay tuition and fees in return for a medical education pursuant to that school's published rules, regulations, and requirements. Importantly, the relationship between a school and its students, especially here when that school is a private university (a for-profit educational institution with both a medical and a veterinary school) is contractual in nature. Specifically, an implied-in-fact contract. *See. Allen* v. *Jacksonville Univ.*, 3:21-CV-178-MMH-LLL, 2022 W17668615 at *7 (M.D. Fla. Dec 14, 2022) (*quoting*) *John B. Stetson Univ.* v. *Hunt*, 88 Fla 510, 517 (Fla. 1924). And, while Defendant may arguably possess discretion sufficient to set Pre-Test score guidelines exceeding those required by the test

manufacturer – the same manufacturer as the USMLE Part II who is likely in the best position to determine a reasonable cut-off possessing predictive value for passing its own examination – Defendant may not unilaterally alter the terms it provided its students in writing, without notice and/or set individually applicable guidelines after-the-fact.

Defendant's prohibition on taking Part II, prevents Plaintiff from meeting any remaining conditions precedent to graduating, entering the Match, completing her post-graduate medical education, and being able to earn sufficient enough funds to repay her student loans – loans that were paid to Defendant in good faith as part of Plaintiff's tuition. By seemingly altering its requirements on a student-by-student basis, and by preventing an admittedly outstanding medical student that has already met Defendant's own published term to proceed, Defendant appears to have clearly breached the bargain it struck with that student. Whether that breach was intentional or not remains to be discovered.

Notably, while Defendant's Opposed Motion to Dismiss arguing failure to state a claim(*Doc. 22)* remains pending. Defendant essentially argued that it possessed discretion to set its own standards and that Plaintiff failed to meet them. However, while Plaintiff agreed  that Defendant could set its own standards, those standards could not be arbitrary and capriciously set. And they had to apply to all students subject to Defendant's published student handbook,

rules, regulations, and other published material(s). Here it is not the setting of standards that concerns the Plaintiff but rather that the private university set its standards, published them, and now refuses to fulfill its own part of the bargain.

Plaintiff should meet the required heightened burden of possessing a reasonable likelihood of success because Plaintiff already met or exceeded all Defendant's published conditions precedent for taking Part II. Yet, while accepting Plaintiff's performance under the implied-in-fact contract between them by accepting payment of tuition and/or fees, Defendant continued and continues to inexplicably frustrate Plaintiff's intent and purpose by prohibiting Plaintiff from taking Part II in breach of its contract. As a result, although an extraordinary remedy, this Court should enter a Preliminary Injunction requiring that Defendant meet its own obligations and permit that Plaintiff take Part II on August 25, 2023, or as soon thereafter as possible.

**Plaintiff Has Been and Is Being Irreparably Harmed by Defendant**

A preliminary injunction should be entered in this case to prevent, mitigate, and at least partially recompense Plaintiff for the irreparable harm(s) she already sustained, is now sustaining, and will continue to sustain the future. Defendant's breach of its contractual relationship with Plaintiff by failing to permit Plaintiff the chance to take Part II, not only causes economic harms that might be corrected by an economic award, but that also irreparably result in harm from: (1) the excess time Plaintiff must spend in medical school; (2) the

severe reputational damage inflicted upon Plaintiff and its negative impact on her future professional career; and (3) the opportunities forever lost to Plaintiff.

Defendant's failure to adhere to the terms of the bargain between Plaintiff and Defendant caused Plaintiff to lose three years that cannot be restored by monetary damages. But for Defendant's breach of its own written terms requiring a Pre-Test score exceeding 222, Plaintiff would have taken Part-II after exceeding the required Pre-Test score on December 18, 2021, and then could have entered the Couples Match with her husband and Matched in April 2022. Defendant's breach prohibited Plaintiff's participation in the Couples Match and Plaintiff's husband entered the Match, Matched, and began his post-graduate medical training on July 1, 2022.

As a result, Plaintiff will be required to enter the Match several years later and proceed through the Match as an individual. It will not matter where her husband is geographically. And given the vagaries of the Match itself, the limited number of available spaces, the likelihood that Plaintiff will be poorly considered both for having had to spend additional time as a medical student and because her medical school and post graduate training might not be seen as having occurred over a continuous period of time will in all likelihood result in Plaintiff's Matching, if at all, at a location geographically distant from her spouse. And while the significant time, dedication, and effort required for post graduate medical education negatively impact many interpersonal relationships, the

geographic distance itself will unnecessarily complicate Plaintiff's relationship with her spouse.

Additionally, Plaintiff and her husband recently welcomed a child into their family. The added stress of geographic distance will dramatically compound any expected stress related to a newborn, a post graduate medical training program, and any required childcare. This in addition to potentially compensable yet devastating economic stress because although it happily accepted tuition and fees for the additional time it required Plaintiff to spend after Plaintiff met all its requirements to take Part II, Defendant no longer recognizes Plaintiff as a full-time student.

Since Plaintiff funded her tuition and fees with student loans because Defendant no longer considers a full-time student and because Plaintiff is not enrolled in post graduate medical education, Plaintiff may not forebear payment of those student loans and must either begin repaying them (albeit without being able to work and earn a sufficient income as a physician or internship/resident) or default on her student loans. Had Defendant not prohibited Plaintiff from taking Part II, at this point, after two years of post-graduate medical training, Plaintiff could have been actively licensed to practice medicine and surgery in Florida. *See Chapter 458.311 Fla. Stat. (2022).*

In addition to lost time, Defendant's improper refusal to allow that

Plaintiff take Part II irreparably harmed Plaintiff's reputation. Before it failed to fulfill the terms of the bargain governing their relationship, Defendant evaluated Plaintiff and found that Plaintiff possessed an excellent reputation. Defendant admitted that "[Plaintiff's] transcript document[ed] that she was a truly outstanding [medical] student...who [was] focused and perform[ed] well in all circumstances...and who...demonstrated an understanding and proficiency in each of our school's core competencies." *Doc 2-4*.

But, to everyone that did not participate in Plaintiff's medical education, Defendant's failure to allow that Plaintiff take Part II clearly demonstrates an outward showing that Plaintiff required at least 50% more time in medical school, 2 years, more than virtually all other medical students. By forcing Plaintiff to potentially graduate in 2024, or later  instead of 2022, Defendant holds Plaintiff out as not being able to complete medical school in 4 years. For the rest of her professional career, Plaintiff will bear the irreparable reputational harm created from not having completed medical school in four years. Plaintiff will be forced to explain this to other physicians, employers, referring physicians, medical facilities, hospitals, third-party payors, state licensing boards, medical malpractice insurers, and patients.

All with any knowledge of this delay will assume that Plaintiff's inability to complete medical school in four years was related to Plaintiff's inability to understand medicine, to provide good, reasonable, or acceptable medical care.

And that Plaintiff did not meet Defendant's requirements when Defendant itself evaluated Plaintiff and determined that, "[Plaintiff] was an outstanding medical student." *Doc 2-4.*

Defendant's failure to abide by the bargain it struck with Plaintiff now requires that aach and every time Plaintiff applies for employment, initial or renewal licensure, tries to obtain malpractice coverage, tries to join a third-party insurance panel, tries to obtain initial or renewal facility privileges, that if considered at all, Plaintiff will have to explain the delay in her medical education. Here too the if considered at all is important to realize that this Defendant enforced but involuntary educational delay may be considered on its face and the Plaintiff never provided with an opportunity to explain.

This inability to even provide an explanation underlies opportunities forever lost to the Plaintiff as a result of Defendants failure to adhere to its own written agreement. Plaintiff's additional time in medical school will forever brand her a potential undesirable. While economic damages might provide some conservative compensation for lost employment, lost patients, lost referrals, lost privileges, lost licensure, such economic damages will do nothing to restore, support, or suggest that Plaintiff herself really was an outstanding medical student.

Finally, these lost opportunities contribute to Plaintiff's irreparable harms by: making it more difficult to pass Part II because this enforced time away

necessarily requires that the data learned and practiced recedes; the chance of Matching and training with her spouse is forever lost at least because while Plaintiff was being made to retake a Pre-Test that she passed, Plaintiff's spouse was engaged in his own post graduate medical training. And as noted above, potentially not being in the same geographic location will further stress their relationship and make child-care much more difficult.

Similar to *Navarro,* where this Court held that, "Courts have consistently held that, given the fleeting nature of college athletics, plaintiffs will suffer irreparable harm by losing the opportunity to participate in their sport of choice on a continuous and uninterrupted basis (for even one year." *Navarro (quoting) Biediger v. Quinnipiac Univ.,* 616 F. Supp. 2d 277, 291 (D. Conn. 2009), the delay measured in years attributed to Defendant's failure to live up to its own published criteria, caused Plaintiff to lose years of eligibility for her post graduate medical education. Like performance athletes, those in post graduate medical education are required to dedicate long hours, function in a variety of challenging circumstances, and train incessantly. Unlike athletes, those undergoing post graduate medical education must also learn how not to harm their patients. And, like the athlete considered in *Navarro,* who might miss out during a critical period, here Preliminary Injunctive relief is intended to allow that Plaintiff preserve her ability to fully participate in her post graduate medical education because such post graduate training requires similar time, attention,

endurance, and physical prowess to keep up, learn clinical skills and procedures, avoid harming patients, and maintain one's well-being, all while being sleep deprived. Accordingly, for the reasons cited above, Plaintiff should have fulfilled her heightened burden.

Defendants irreparable harm arises from the lost time, opportunity, and reputation damage it caused Plaintiff which may not all be fully compensated by a monetary award. Accordingly, since these irreparable harms, among others, may be limited or prevented by entry of a Preliminary Injunction, Plaintiff hopes to have met the requirement of a heightened burden and respectfully seeks this Courts' equitable protection through this extraordinary remedy requiring that Defendant allow that Plaintiff take Part II.

### The Harm(s) to Plaintiff Significantly Outweigh Any Potential, Negligible, or Non-Existent Harm to Defendant.

As argued above, both the economic and non-economic harm(s) to the Plaintiff by Defendant's actively prohibiting Plaintiff from taking Part II dramatically outweigh the negligible if not absolute absence of harm to the Defendant. In fact, Plaintiff can foresee no harm befalling Defendant if this extraordinary remedy should be granted. This is only a matter of allowing that Plaintiff take the second of a three-part medical licensure examination. Whether or not Plaintiff succeeds has no impact on Defendant. Success is determined solely based on Plaintiff's ability. If Plaintiff fails, she must remediate and re-take. If Plaintiff fails, Defendant has nothing more to do. *Doc. 2-4.*

Not only did Plaintiff exceed Defendant's required Pre-Test score in December 2021, but Plaintiff also successfully completed Defendant's basicscience curriculum and its clinical-science curriculum. And, as an "outstanding medical student," *Doc. 2-4,* that excelled during her clinical rotations, Plaintiff already reinforced Defendant's positive reputation at all locations where such rotations were performed. Because all outside training is complete, Plaintiff's performance on Part II should have absolutely no impact on Defendant's reputation. Defendant will suffer neither economic nor non-economic harm(s) related to its allowing Plaintiff to take Part II.

In addition to the irreparable harm(s) listed above in time, reputation, and lost opportunity, Plaintiff also suffered and is continuing to suffer significant economic harm(s) related to Defendant's failure to abide by the plain terms of its contract with the Plaintiff and its other students. While Plaintiff does not foresee any harm to Defendant by allowing this Preliminary Injunction, Plaintiff does in fact foresee harm befalling the Defendant if this Preliminary Injunction is not entered. If information about Defendant's failure to meet its contractual obligations with Plaintiff reaches enough current or potential students, Defendant's for-profit enrollment of new and continuing medical students may decline. By not permitting Plaintiff to fulfill her graduation requirements, Defendant may encourage other students to depart and seek other private universities that meet their contractual obligations.

Importantly, the Pre-Test itself only possesses predictive value for passing the USMLE Part II. While it may appear reasonable that Defendant's hopes and aspirations would be for its students to pass Part II, not allowing access to Part II to an outstanding medical student that already exceeded its own published PreTest score more likely represents an unreasonable and indefensible position. Given the plain language of the bargain between Plaintiff and Defendant, given that it appears that only Plaintiff actually suffered from and now suffers economic and irreparable harms, and because Plaintiff already met or exceeded all Defendant's published criterial to take Part II, Plaintiff appears to have met or exceeded a heightened burden in requesting that this Court enter a Preliminary Injunction requiring that Defendant allow Plaintiff to take Part II.

### Granting a Preliminary Injunction is in the Public Interest

The public interest is best served when valid contractual relationships and obligations are enforced. Possessing both a Medical School and a Veterinary School, and as a for-profit business entity Defendant appears to fit the definition of a private university. Plaintiff alleged throughout that she was and is a student of Defendants. *Doc. 2.* Defendant is a Florida registered foreign for-profit corporation with a principal place of business on Grand Cayman Island in the British West Indies. *Doc. 2.* Defendant's administrative offices, mailing address, and Registered Agent are in Orange County, Florida, United States. *Doc. 2-2.*

Upon information and belief Defendant manages its students from Orange County, Florida. *Id.* Defendant's Motion to Dismiss, *Doc. 22,* raised neither improper venue nor jurisdiction. And upon information and belief, this Court previously held jurisdiction over at least one case in which Defendant was previously a Defendant against another student: *Estrada* v. *St. Matthews Univ. School of Medicine.,* 6:20-CV-01763-CEM-EJK.

This Court considers the relationship between a private university and a student as if it were contractual in character. *See. Allen* v. *Jacksonville Univ.,* 3:21CV-178-MMH-LLL, 2022 W17668615 at *7 (M.D. Fla. Dec 14, 2022) *(quoting) John B. Stetson Univ.* v. *Hunt,* 88 Fla 510, 517 (Fla. 1924) (for the premise that the contract between private universities and its students in Florida are considered implied in fact contracts).

This Court previously determined that, "Enforcing a legitimate contract between two parties is typically in the public's interest." *Larweth* v. *Magellan Health, Inc.,* 398 F. Supp. 3d 1281, 1292 (M.D. Fla. 2019)*(citing) NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.,* 280 F. Supp. 3d 324, 348 (D. Conn. 2017) ("[I]n light of the parties' right to contract as they desire, the injunction does nothing to disserve the public interest."), *vacated on other grounds,* 745 F. App'x 416, 417 (2d Cir. 2018). As a result, Plaintiff argues that her relationship as a student with Defendant as a private university was governed by an implied in fact contract

whose terms were published by Defendant and provided as exhibits to the
Complaint. *See Docs. 2 and Doc 2-1 – 2-15.*

Pursuant to the implied in fact contract governing the relationship between
student and private university, in return for Plaintiff's payment of tuition and
fees and Plaintiff's successful completion of her basic-science and clinical-
sciences rotations, and passing Parts I and II, Defendant as the private institution
was obligated to provide Plaintiff with a medical education, access to Parts I and
II (provided Plaintiff met published Pre-Test requirements), and ultimately a
medical degree at graduation.

Defendant breached the terms of its agreement with Plaintiff on December
18, 2021, when despite having exceeded the required Pre-Test score, Defendant
refused to provide Plaintiff with access to take Part II. And this prohibition
prohibited Plaintiff from either participating in the Match, completing any other
graduation requirements, or graduating. Because their relationship was
governed by an implied in fact contract whose terms were unilaterally
determined by the Defendant, and because Defendant failed to abide by its own
terms, Plaintiff was forced to seek this Court's intervention.

As this Court held in *Allen* and the Florida Supreme Court held long ago in
*John B. Stetson*, the public interest is best served, and not disserved, when the
Court enforces the plain written terms, if any, underlying an implied in fact
contract and supports the bargained rights of essentially powerless students

subjected to the fickle whim(s) of a private university that fails to meet its own obligations. Arguably while private universities may in fact possess sufficient discretion to unilaterally modify their published terms, such modifications may be limited in some cases. But in no case should a private university be able to selectively modify its relationship with only one student in a retroactive fashion without notice – i.e., double secret probation should not be permissible. *See Animal House, USA, 1978.*

The public interest is served by granting a Preliminary Injunction because Defendant, as a private university, failed to comply with its own requirements by electively choosing not to allow an outstanding students access to Part II when that student successfully met all conditions for doing so. Here an extraordinary intervention is required to protect students from an overreaching private university that already control its students economic and non-economic interests and now seeks to require further payment of tuition and fees without providing the student with any benefit.

In addition, because of a severe physician shortage currently being reported as endemic throughout the United States (*See Zhang X, Liu D, Pforsich H, Liu VW. Physician workforce in the United States of America: forecasting nationwide shortages. Hum Resour Health. 2020 Feb 6;18(1):8. doi: 10.1186/s12960-020-0448-3. PMID: 32029001; PMCID: PMC7006215),* the public interest is also served, and not disserved, by requiring that medical students with outstanding evaluations

who have met all a private university's conditions precedent to taking Part II be allowed the opportunity to take Part II, Match, receive post graduate medical training and enter a depleted physician workforce.

Accordingly, because the Public Interest is served by enforcing mutually agreed contract terms and because the Public Interest is equally served by the addition of outstanding medical students as working physicians, Plaintiff's Motion for Preliminary Injunction should be allowed, and Defendant required to allow Plaintiff to take Part II. Plaintiff

### Conclusions and Prayer for Relief

Despite Defendant's own Dean of Clinical Sciences writing, "Danielle has proven to herself and to others that she is a highly capable student who is focused and performs well in all circumstances...I predict that she will carry these strengths into her residency training and contribute greatly to the program, her colleagues, her teachers, and her patients...[and that Plaintiff is] a truly outstanding [medical] student in every way," (*Doc.* 2-4) and despite having already met Defendant's Pre-Test required score on December 18, 2021 (*Doc.* 2-6), Defendant inexplicably continues to prohibit Plaintiff's access to the USMLE Part

II.

Given the argument above, the pleadings, the response to Defendant's Motion to Dismiss, Plaintiff should have met any necessary heightened burden in seeking the extraordinary remedy requested to provide a preliminary injunction

requiring that Defendant permit Plaintiff to take the USMLE Part II because, based on the plain, published terms of the implied in fact contract between Plaintiff and Defendant, Defendant failed to fulfill its obligations pursuant to its own written requirements.

Because Defendant breached the plain terms of its own-drafted contract by publishing an Email in August 2021 requiring a Pre-Test score of 222, because Plaintiff exceeded the 222 required in December 2021, because Defendant provided Plaintiff with a transcript demonstrating that Plaintiff met or exceeded all other requirements, and because Defendant evaluated Plaintiff and stated that she was an outstanding medical student that met all basic-science and clinicalscience criteria, even under the heightened burden required, Plaintiff should have provided sufficient facts, writings, and argument to support: Plaintiff's future likelihood of success; that Plaintiff sustained and continues to sustain irreparable harm(s); that the harm to Plaintiff greatly outweighs any potential harm to the Defendant; and that the Public Interest is served, and not disserved by this Court's entry of a Preliminary Injunction and enforcing the plain terms of a mutually negotiated, contractual relationship between student and private university.

Unfortunately, through no fault of the Defendant, justice requires this Court's exercise of its extraordinary and discretionary intervention via Preliminary Injunction to protect the Defendant from an unreasonable private

university that absolutely refuses to adhere to obligations that the private

university itself unilaterally set. Plaintiff most respectfully requests that this

Court enter a Preliminary Injunction requiring that Defendant allow that Plaintiff

take the USMLE Part II or as soon as practicable after August 25, 2023, and

participate in the 2023-2024 Match.

### Certificate of Compliance with Local Rule 3.01(g)

Undersigned certifies that on August 7-8, 2023, Plaintiff's counsel conferred

with Defendant's counsel seeking Defendant's agreement to permit that

Plaintiff take the USMLE Part II on or as soon as possible after August 25,

2023. Defendant's counsel advised that Defendant opposed Plaintiff's request.

### Certificate of Service

I certify that on this date a true and correct copy of the foregoing Motion

was filed via CM/ECF where a copy was provided to the Clerk of Court for filing

and a copy provided to Defendant's counsel:

> Dale A. Evans, Jr.,
> Florida Bar #98496
> Locke Lord LLP
> 777 South Flagler Drive
> East Tower, Suite 215
> West Palm Beach, Florida 33401
> (561) 833-7700 (Telephone)
> (561) 655-8719 (Facsimile)
> Dale.Evans@lockelord.com

**Petitioner's Verification**

| State of Indiana | ) |
| | ) |
| County of Hamilton | ) |
| | ) |

The undersigned, Danielle Gegas, Petitioner, being first duly sworn, states that she has read the above Amended Motion for Preliminary Injunction and the Amended Complaint, attached Exhibits, the originally filed Complaint and its attached Exhibits, knows the contents contained within each document filed with the Court, and that all the statements contained in each of these documents are true and correct to the best of her knowledge and belief.

Dated this 1st Day of September 2023

Petitioner, Danielle Gegas

Notary Signature: _____

Notary Name: _Lisa M. Parsley_

Notary Expiration Date: _May 30, 2024_

Notary Seal:

Lisa M. Parsley
Notary Public, State of Indiana
Hendricks County
Commission Number 686044
My Commission Expires
May 30, 2024

GEGAS v. SMUSOM Amended Verified Motion Prelim Injunction   027

Respectfully submitted this 1st day of September 2023

The Florida Legal Advocacy Group of Tampa Bay
  /s/  *Adam S. Levine*
Adam S. Levine, M.D., J.D.
Florida Bar #78288
1180 Gulf Blvd., Suite 303, Clearwater, FL 33767
(727) 512 – 1969 [Phone]
(866) 242 – 4946 [Facsimile]
aslevine@msn.com [Primary E-mail]
alevine@law.stetson.edu (Secondary E mail)
Attorney for Petitioner